# Exhibit A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-10222-WLH-BFM | Date | July 9, 2026 |
|---|---|---|---|
| Title | *So Cal Storage, LLC et al v. UNITS Franchising Group, Inc.* | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge | |
|---|---|---|
| Claudia Garcia-Marquez | | None |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:    (IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS [30]**

The Court is in receipt of Defendant UNITS Franchising Group, Inc.'s Motion to Dismiss Complaint (the "Motion").  (Mot., Dkt. No. 30).  Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument.  For the following reasons, the Court **GRANTS** the Motion.

## I.    BACKGROUND

### A. Parties

Plaintiff So Cal Storage, LLC is a California-based self-service storage company with a principal place of business in Los Angeles, California, with all its members residing in California.  (Complaint ("Compl."), Dkt. No. 1 ¶ 5).  Plaintiff Bay Area Storage, LLC is a California self-storage company with its principal place of business in East Bay, California.  (*Id*. ¶ 6).  All its members are also California residents.  (*Id*.).  Plaintiff NIMA Group LLC is a California company with its principal place of business in Rocklin, California.  (*Id*. ¶ 7).  All its members are also California residents.  (*Id*.).  Plaintiff TAJ Units Holdings, LLC is a California limited liability company with its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

principal place of business in Ventura County, California, and all its members are California residents.  (*Id*. ¶ 8).  Defendant UNITS Franchising Group, Inc. ("UFG" or "Defendant") is a South Carolina corporation with its principal place of business in Daniel Island, South Carolina.  (*Id*. ¶ 9).

B. **Factual Background**[1]

1. *Franchise Agreements*

On October 24, 2025, Plaintiffs So Cal Storage, LLC, Bay Area Storage, LLC, NIMA Group LLC and TAJ Units Holdings, LLC (collectively, "Plaintiffs") filed this instant action against Defendant alleging eight causes of action: (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) software-based breach of contract; (4) breach of contract concerning the National Advertising Fund; (5) breach of implied covenant of good faith and fair dealing; (6) specific performance for accounting; (7) violation of California's Unfair Competition Law ("UCL"); and (8) violation of the California Franchise Investment Law, California Corp. Code § 31202.  (*Id*. ¶¶ 56–110).  This case arises out of four independent franchise agreements (collectively, the "Franchise Agreements") between Plaintiffs and Defendant, entered at various times:

> Franchise Agreement between Plaintiff So Cal Storage, LLC and Defendant UFG dated December 19, 2022.  (Complaint, Dkt. No. 1-1, Ex. A at 122).
>
> Franchise Agreement between Plaintiff Bay Area Storage, LLC and Defendant UFG dated August 28, 2019.  (*Id*. at 176).
>
> Franchise Agreement between Plaintiff NIMA LLC and Defendant UFG dated July 1, 2008.  (*Id*. at 8).

---

[1] The following factual background is derived from the allegations in Plaintiffs' Complaint. (*See generally* Compl.).  For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Franchise Agreement between TAJ Units Holdings, LLC and Defendant UFG dated August 6, 2020.  (Compl. ¶ 8).

The Franchise Agreements contain a choice-of-law provision (the "Choice-of-Law Provision") stating:

> Except to the extent this Agreement or any particular dispute is governed by the U.S. Trademark Act of 1946 or other federal law, this Agreement shall be governed by and construed in accordance with the laws of the State of South Carolina (without reference to its conflict of laws principles), excluding any law regulating the sale of franchises or governing the relationship between a franchisor and franchisee, unless the jurisdictional requirements of such laws are met independently. . . .

(Compl. at Ex. A at 46; *see also id*. at 58, 117, 156-157, 210).

The Franchise Agreements also contain a one-year limitation of claim clause (the "One-Year Limitation of Claim Clause"), which states:

> [N]o cause of action arising out of or under this Agreement may be maintained by Franchisee against Franchisor unless brought before the expiration of one (1) year after the act, transaction or occurrence upon which such action is based or the expiration of one (1) year after the Franchisee becomes aware of facts or circumstances reasonably indicating that Franchisee may have a claim against Franchisor hereunder, whichever occurs sooner, and that any action not brought within this period shall be barred as a claim, counterclaim, defense, or set-off.

(Compl. at Ex. A at 48; *see also id.* at 59, 118, 158, 211).

2.    *The UNITS System*

UFG offers franchise opportunities to operate UNITS Moving and Portable Storage businesses and provides select proprietary equipment and related materials to its franchisees.  (Compl. ¶ 14; Compl. at Ex. B at 2).  Plaintiffs allege UFG falsely marketed a proprietary system which includes custom-built containers and related equipment, but,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

because such items are non-proprietary, third parties still manufacture and sell identical products to the public and to UFG's competitors at a lower price.  (Compl. ¶¶ 16, 17).

Plaintiffs further allege that during Discovery Day, before Plaintiffs signed their respective Franchise Agreements, UFG represented within the Franchise Agreements that franchisees would receive all revenue from long-distance moves ("LDM") after costs and expenses; however, UFG instead retained most of that revenue.  (*Id.* ¶ 18).  According to Item 19 of several of UFG's FDDs, the average annual gross profit margin for franchisees declined from 36.9% in 2018 to 6.0% in 2024, yet UFG failed to address declining performance and the increased number of failing franchisees.  (*Id.* ¶ 19).

Plaintiffs allege performance declined because UFG required franchisees to purchase containers and equipment at an inflated price, denied alternative options despite the Franchise Agreements expressly permitting it and failed to disclose such purchasing restrictions and the financial benefits UFG received from said purchases.  (*Id.* ¶ 20).  Plaintiffs further allege that UFG and its founder used franchisee funds, including advertising fund and other revenues, to subsidize corporate and personal expenses.  (*Id.* ¶ 21).

   3.   *Computer Software and Point-of-Scale System*

UFG's 2020 FDD requires franchisees to "use the information technology equipment and service" that UFG designates, including its "proprietary UNITS Operating Software."  (Compl. at Ex. B at 12).  Section 11.5 of the Franchise Agreement between Plaintiff Bay Area Storage, LLC[2] and Defendant also states:

---

[2] The Franchise Agreement between Plaintiff So Cal Storage, LLC also contains a substantially similar, but not identical contractual language.  Specifically, it does not include the language "...and the support of UNITS operating software." (Compl. at Ex. A at 140).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Franchisee shall purchase and utilize computer and point-of-sale systems consisting of hardware and software in accordance with Franchisor's specifications . . . In addition, Franchisee agrees to pay to, to Franchisor or the designated vendor of franchisor's choice, a software and support fee of $200 to $400 per month for site license and the support of UNITS® operating software.

(Compl. at Ex. A at 194). UFG's proprietary software "has been used by [UFG's] affiliates in the operation of a similar business since January of 2005." (Compl. ¶ 23, Compl. at Ex. B at 13). UFG allegedly represented to Plaintiffs that its proprietary software had been used by its affiliates since 2005, which led Plaintiffs to believe the system was fully functional and, thus they relied exclusively on UFG's point-of-sale ("POS") system to perform essential business functions. (Compl. ¶¶ 23-25).

The Complaint alleges that in 2023, UFG introduced the StoreSmart software despite known software issues and potential compatibility issues. (*Id.* ¶ 26-27). UFG then accelerated the rollout, gave less than one month's notice to franchisees about fee changes and only provided incomplete training videos. (*Id.* ¶ 27). Plaintiffs allege they still experience persistent issues with the StoreSmart POS, which prevented them from fully devoting their time and efforts to operating their businesses. (*Id.* ¶¶ 30, 33). Plaintiffs further allege that UFG breached section 11.5 of the Franchise Agreements by ceasing to provide support while continuing to charge excessive and duplicate fees. (*Id.*).

    4.    *National Advertising Fund/Brand Fund*

Pursuant to section 10.3.4 of the Franchise Agreements, Plaintiffs allege that they are entitled to a detailed accounting of the receipts and disbursements of the National Advertising Fund for prior years. (*Id.* ¶ 38). Section 10.3.4 states in part that "[a]n

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

accounting of the operation of the National Advertising Fund shall be prepared annually and shall be available to Franchisee upon request."[3]  (Compl. at Ex. A at 99, 138).

The Complaint alleges that Plaintiffs' prior requests for accounting have been ignored and/or have been insufficiently addressed with high-level summary data that lacked detail and conflicted with UFG's own financial statements.  (Compl. ¶ 38.).  For example, the Complaint alleges that while UFG's 2024 income statement reflects that UFG used over 50% of the total National Advertising Fund contributions in 2024 to pay corporate salaries, the 2025 FDD misrepresents that UFG spent the money on advertising and development.  (*Id.* ¶ 39).  The Complaint also alleges that the Defendant has used the majority of the National Advertising Fund to pay for corporate salaries, annual conferences, personal preferences and luxuries, such as VIP tickets to NASCAR events.  (*Id.* ¶ 41).

    5.   *Vendor Relationships*

Under section 4.4.6 of the 2020 Franchise Agreement, "franchisees may purchase UNITS Containers directly from Franchisor or lease UNITS Containers from a third-party provide[r], if available."  (Compl. ¶ 42; Compl. at Ex. A at 130).  Despite this, UFG imposed blanket denials any time franchisees tried to seek alternative suppliers and required all purchases to go through UFG or its approved vendor at a significantly increased cost.  (Compl. ¶¶ 42, 43).  Plaintiffs also allege that UFG refused to consider alternative suppliers and equipment options for non-proprietary goods necessary for

---

[3] This provision is found in the Franchise Agreement between Plaintiff Bay Area Storage, LLC and Defendant. Section 10.3.4 in So Cal Storage, LLC's Franchise Agreement, differs slightly: "[a]n accounting of the operation of the National Advertising Fund shall be prepared annually *and high-level summary* shall be available to Franchisee upon request."  (Compl. at Ex. A at 138) (emphasis added).  Provision 10.3.4 is absent in the Franchise Agreement between Plaintiff Nima Group LLC and Defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

UNITS franchisees to operate their business, despite franchisees' entitlement to utilize and transact with alternative vendors.  (*Id.* ¶ 44).  The Complaint further alleges that UFG restricted franchisees' ability to purchase used equipment or equipment from other franchisees and instead required them to purchase new equipment from specified vendors, resulting in longer wait times that caused franchisees to lose revenue.  (*Id.* ¶¶ 46, 47).

## C. **Procedural Background**

On October 24, 2025, Plaintiffs filed this action against Defendant.  (Compl., Dkt. No. 1).  On December 19, 2025, Defendant filed its Motion to Dismiss Plaintiffs' Complaint.  (Mot., Dkt. No. 30).  Plaintiffs filed their Opposition to Defendant's Motion to Dismiss.  (Opposition ("Opp'n"), Dkt. No. 36), and Defendant filed its Reply on February 13, 2026.  (Reply, Dkt. No. 37).

## II. **LEGAL STANDARD**

### A. **Rule 12(b)(6)**

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action."  *Id.* "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

The Court must construe the complaint in the light most favorable to the plaintiff and take its non-conclusory allegations as true.  *Boquist v. Courtney*, 32 F.4th 764, 773

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(9th Cir. 2022). The Court is not required, however, to accept as true legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555. ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions..."). Pursuant to Fed. R. Civ. P. 15(a)(2), when a motion to dismiss is granted, courts should "freely give leave [to amend] when justice so requires."

## B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Id.* (*quoting In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

## III. DISCUSSION

### A. Choice-of-Law and One-Year Limitation of Claim Clause (Count I, II, III)

This dispute is predicated upon the Parties' Franchise Agreements, which purport to be "governed by and construed in accordance with the laws of the State of South Carolina (without reference to its conflict of laws principles), excluding any law regulating the sale of franchises or governing the relationship between a franchisor and franchisee." (Compl. at Ex. A at 46). The Choice-of-Law Provision explicitly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

contemplates that, except for certain circumstances, disputes arising out of the Franchise Agreements and the Parties' business relationship are governed by South Carolina law. (*Id.*). "[W]hen confronted with a choice-of-law question, a federal district court sitting in diversity must use the choice-of-law rules of its forum state to determine which state's substantive law to apply." *JMP Sec. LLP v. Altair Nanotechnologies Inc.,* 880 F. Supp. 2d 1029, 1035 (N.D. Cal. 2012). "If the parties state their intention in an express choice-of-law clause, California courts ordinarily will enforce the parties' stated intention." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009) (internal quotation marks omitted).

### 1. Scope

As an initial matter, the Choice-of-Law Provision expressly excludes "any law regulating the sale of franchises or governing the relationship between a franchisor and franchisee." (Compl. at Ex. A at 46). Accordingly, Plaintiffs' statutory claims (Count VII and VIII) are governed by California law.

### 2. Enforceability

The Court must determine whether the Choice-of-Law Provision is enforceable with respect to the remaining, common law claims (Counts I-VI). "Only in limited circumstances will a court decline to enforce such clauses, e.g., where (1) the chosen state has no substantial relationship to the parties or transaction; or (2) such application would run contrary to a California public policy or evade a California statute." *Certain Underwriters at Lloyd's v. Expeditors Int'l of Wash., Inc.*, 584 F. Supp. 3d 860, 868 (C.D. Cal. 2022). If the chosen state's law "conflicts with a fundamental California policy[,] then we evaluate whether California has a materially greater interest than the chosen state in resolution of the issue." *ABF Cap. Corp. v. Osley*, 414 F.3d 1061, 1066 (9th Cir. 2005). "In determining which state has a materially greater interest, California

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

courts consider which state, in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied." *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1324 (9th Cir. 2012) (internal quotation marks omitted).

First, South Carolina has a substantial relationship with the Parties, because Defendant is headquartered and maintains its principal place of business in Daniel Island, South Carolina. *See Dos Beaches, LLC v. Mail Boxes Etc., Inc.*, No. 09CV2401-LAB (RBB), 2012 WL 506072, at *20 (S.D. Cal. Feb. 15, 2012) (finding that parties had a substantial relationship to California because the defendant is based in California); *Samica Enters., LLC v. Mail Boxes Etc. USA, Inc.*, 637 F. Supp. 2d 712, 728 (C.D. Cal. 2008) (finding the "choice of law" clause to be substantially related to the parties, because Defendant is a California corporation).

Second, the Court must determine whether the application of South Carolina law in this action would be contrary to fundamental California public policy or evade a California statute. There are no "bright-line rules" governing whether a law is contrary to a state's fundamental public policy, but "[i]t is clear . . . that the policy must be a 'substantial' one." *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 866 (N.D. Cal. 2019). The party seeking the application of a law different from an otherwise enforceable choice-of-law provision "must point to a statute or judicial decision that clearly states such a strong public policy." *Aghdaei v. Envista Holdings Corp.*, No. EDCV 25-1091-DTBx, 2025 WL 2631534, at *5 (C.D. Cal. Aug. 22, 2025) (quoting *Bumble Trading, Inc.*, 393 F. Supp. 3d at 866).

Defendant contends that applying South Carolina's law to invalidate the One-Year Limitation of Claim Clause—which shortens the statute of limitations— would be contrary to California's public policy, and therefore the Court cannot and should not do so. (Reply, Dkt. No. 37 at 6). The Court disagrees. Although South Carolina law

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

permits contracting parties to set their own limitations periods as long as the agreed period does not shorten the statutory limitations period, *see* S.C. Code Ann. § 15-3-140 (2005); *see also Huskins v. Mungo Homes, LLC*, 910 S.E.2d 474, 476 (S.C. 2024), *reh'g denied* (Jan. 16, 2025), *cert. denied*, 146 S. Ct. 91 (2025), California is more permissive, as California courts generally permit "contracting parties to modify the length of the otherwise applicable California statute of limitations, whether the contract has extended or shortened the limitations period," *Hambrecht & Quist Venture Partners v. Am. Med. Int'l., Inc.*, 38 Cal. App. 4th 1532, 1547 (1995). There is "no fundamental [California] state policy against applying a foreign jurisdiction's statutes of limitations to claims brought within California courts." *Hambrecht & Quist Venture Partners*, 38 Cal. App. 4th at 1548-49. California public policy does not prohibit the application of the One-Year Limitation of Claim Clause.

South Carolina law, on the other hand, does. Defendant argues that the fraudulent and negligent misrepresentation claims (Counts I and II) and software-based breach of contract claim (Count III) are time-barred pursuant to the One-Year Limitation of Claim Clause set forth in the Franchise Agreements. (Mot. at 9).

Under South Carolina law, breach of contract claims, fraudulent misrepresentation and negligent misrepresentation are governed by a three-year statute of limitations. *See* S.C. Code Ann. § 15-3-530; *see also Sink v. BB&T Ins. Servs., Inc.* No. 6:14-375-HMH, 2015 WL 12838971, at *2 (D.S.C. Feb. 18, 2015) (noting the three-year statute of limitations under South Carolina law for various claims including breach of contract, fraud, negligent misrepresentation). As stated above, the South Carolina Choice-of-Law Provision is enforceable as to these claims, and South Carolina law prohibits provisions that diminution of the statute of limitations. *See Huskins*, 444 S.C. 592 at 595 (noting that the court of appeals held that a clause limiting the statute of limitations was

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

unenforceable because it was void and illegal as a matter of public policy).  Accordingly, the One-Year Limitation of Claim Clause is not enforceable.

Even if, *arguendo*, the One-Year Limitation of Claim Clause were enforceable, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).  Because the statute of limitations is an affirmative defense, the "defendant has the burden of proving the action is time-barred." *Grisham v. Philip Morris*, Inc., 670 F. Supp. 2d 1014, 1020 (C.D. Cal. 2009).  Here, the Complaint does not allege specific dates as to when each cause of action occurred or was discovered.  For example, the Complaint does not allege when the contract was breached or when said breach was discovered.

While the Complaint alleges that Plaintiffs relied on misrepresentations made in Defendant's Franchise Disclosure Document and during Discovery Day, (Compl. ¶¶ 18, 57, 65), South Carolina's "statute of limitations are modified by a doctrine known as the 'discovery rule.'" *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2014 WL 234216, at *3 (D.S.C. Jan. 22, 2014).  Under the discovery rule, "the statute of limitations [only] begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." *True v. Monteith*, 489 S.E.2d 615, 616 (S.C. 1997).  Because it does not appear on the face of the Complaint when Plaintiffs knew or should have known "that a cause of action exists for the wrongful conduct" dismissal at this stage is unwarranted, and therefore, denied. *Id.* at 617.

The Court therefore finds that Counts I, II and III are not time-barred by the One-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Year Limitation of Claim Clause.

**B. California Franchise Investment Law ("CFIL") Preemption (Count I, II, VII )**

Defendant next contends that Counts I, II and VII are preempted by the CFIL. (Mot. at 9).  Defendant argues that under Cal. Corp. Code § 31306, the CFIL "supplies the exclusive remedy for misrepresentations and omissions in the offer or sale of a franchise and therefore preempts duplicative common-law fraud theories."  (Mot. at 14).

Prior to its amendment in 2023, Cal. Corp Code § 31306 stated:

> Except as explicitly provided in this chapter, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder. Nothing in this chapter shall limit any liability which may exist by virtue of any other statute or under common law if this law were not in effect.

Cal. Corp. Code § 31306 (2022).

The 2022 Assembly Bill No. 676, Chapter 728, amended Cal. Corp. Code § 31306 to remove the sentence: "Except as explicitly provided in this chapter, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder."  A.B. 676, Ch. 728 § 11 (Cal. 2022).  While the CFIL was amended on January 1, 2023, to remove the preemption clause of section 31306, *see* Cal. Corp. Code § 31306 (2023), at least one court has determined there is no retroactive effect.  *Bundoo Khan Ca LLC v. MAK Al Haaj Bundoo Khan*, No. 8:24-CV-02274-JVS-ADS, 2025 WL 1674488, at *7 (C.D. Cal. May 13, 2025).  In other words, section 31306 still preempts fraud or misrepresentation claims based on CFIL violations before January 1, 2023.  Based on the authority cited by Defendant, which Plaintiffs neither dispute nor provide contrary authority thereto, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Court will apply the version of section 31306 that existed at the time that the Parties entered into the Franchise Agreements (2008, 2019, 2020 and 2022).

The Court next determines whether section 31306 preempts Count I (fraudulent misrepresentation), Count II (negligent misrepresentation) and the fraudulent prong of Count VII (UCL). The Court address each in turn.

*1. Counts I and II are Preempted by the CFIL[4]*

Defendant argues that Plaintiffs' fraudulent misrepresentation (Count I) and negligent misrepresentation (Count II) claims are preempted by the CFIL. (Mot. at 14). Plaintiffs, however, contend that their "CFIL claim is premised solely on written misrepresentations in the FDD," whereas their claims under Counts I and II "extend beyond Defendant's FDD violations" because they involve oral misrepresentations. (*Id.*). The Court disagrees with Plaintiffs' characterization. The Complaint fails to draw any distinction between the oral and written misrepresentation in the FDD as to Count I and Count II. Counts I and II are premised on the same four categories of alleged misrepresentation as Plaintiffs' CFIL claim (Count VIII).

In *Samica Enterprises, LLC v.Mail Boxes Etc. USA, Inc.[5]*, the court interpreted section 31306 "as displacing those claims that rest on misrepresentations or omissions

---

[4] Defendant also independently argues that California's economic loss rule bars Count I and Count II. (Mot. at 21). As explained below, Count I and Count II are dismissed because they are preempted by the CFIL. Therefore, the Court declines to address Defendant's arguments as to the economic loss rule at this time.

[5] Plaintiffs argue that preemption cannot be determined at the motion to dismiss stage and assert that *Samica* is inapposite because it was a decision on a motion for summary judgment. The Court disagrees. Dismissal is appropriate under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Mendiondo*, 521 F.3d at 1104 (citation omitted). Moreover, other courts have dismissed claims under CFIL preemption at the motion to dismiss stage. *See Bundoo Khan Ca LLC*, 2025 WL 1674488, at *6-7; *Quick Dispense, Inc. v. Vitality Foodservice, Inc.*, No. 8:23-CV-02322-FWS-ADS, 2024 WL 2925589, at *12 (C.D. Cal. June 4, 2024).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

covered by the several provisions of the CFIL, and the saving clause merely clarifies that the CFIL does not completely preempt the field." 637 F. Supp. 2d at 721 (*citing Viva! Intern. Voice For Animals v. Adidas Prom. Retail Ops., Inc.*, 41 Cal. 4th 929, 944 (2007) ("[I]nclusion of savings clause in a statute negates field preemption")). The CFIL preempts "'allegations of fraud that are based on CFIL violations,' while 'ensuring that any claims beyond the CFIL's coverage may be brought independently.'" *Full Tilt Boogie v. Kep Fortune, LLC*, No. 2:19-CV-09090-ODWQ (KESx), 2022 WL 3018055, at *5 (C.D. Cal. July 29, 2022) (*citing Samica*, 637 F. Supp. 2d at 721).

Following *Samica*, courts in this district have dismissed fraud claims and UCL claims premised on CFIL violations. *See Range 2 Poke LLC v. Lemonshark Franchising, LLC*, No. 8:22-CV-00949-SPG-ADS, 2022 WL 22914673, at *4-5 (C.D. Cal. Oct. 21, 2022) (holding plaintiff's claims for fraud were preempted, noting that claims resting on alleged misrepresentations falling within the scope of sections 31200 and 31201 may be raised only under the CFIL); *Quick Dispense, Inc. v. Vitality Foodservice, Inc.*, No. 8:23-CV-02322-FWS-ADS, 2024 WL 2925589, at *12 (C.D. Cal. June 4, 2024) (holding plaintiff's claim under the unfairness prong of the UCL was preempted).

To determine whether Counts I and II are based on CFIL violations, the Court turns to the text of the CFIL. Here, the Complaint sets forth four allegations in Counts I and II covered by sections 31202 and 31201 of the CFIL. These allegations involve (a) the "proprietary system" characterized by "proprietary, custom-built containers," (b) the LDM revenue, (c) the "proprietary software" and (d) the financial performance of franchisees in Item 19 of the FDD. (Compl. ¶¶ 57, 65). Under section 31202, "[i]t is unlawful for any person willfully to make any untrue statement of a material fact in any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

statement required to be disclosed in writing pursuant to Section 31101."[6] Cal. Corp.
Code § 31202. Plaintiffs' allegations concerning the proprietary system, the proprietary
software and the financial performance of franchisees in Item 19 fall within the scope of
section 31202 because they concern alleged written misrepresentations found in the 2020
FDD. (*See* Compl. ¶¶ 15, 16, 19, 23).

Under section 31201, "[i]t is unlawful for any person to offer or sell a franchise in
[California] by means of any written or oral communication not enumerated in
Section31200 which includes an untrue statement of a material fact." In *Full Tilt Boogie,
LLC*, the court held that the plaintiff's fraud claims were preempted by sections 31200
and 31201, observing that the plaintiff allegedly relied on the misrepresentations in
deciding to purchase a franchise. 2022 WL 3018055, at *5-6. Likewise, here,
Defendant's LDM revenue statements were allegedly made before Plaintiffs signed their
respective Franchise Agreements and were material to Plaintiffs' decisions to invest in
the UNITS franchises. (See Compl. ¶¶ 18, 60). Therefore, the LDM revenue allegations
fall within the scope of section 31201.

Accordingly, the Court **GRANTS** the Motion as to Counts I (fraudulent
misrepresentation) and II (negligent misrepresentation). Plaintiffs' fraudulent
misrepresentation and negligent misrepresentation claims are **DISMISSED** without
prejudice.

---

[6] Section 31101 of the CFIL exempts the offer and sale of a franchise from provisions of the
CFIL if the franchisor complies with minimum net worth, experience, disclosure and notice
filing requirements. Under Section 31101(c)'s disclosure requirement, a franchisor must
"disclose[] in writing to each prospective franchisee, at least 14 days prior to the execution by
the prospective franchisee of any binding franchise or other agreement" certain specified
information.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*2. Count VII is not Preempted by the CFIL*

Defendant contends that Plaintiffs' UCL claim in Count VII is preempted because it is premised on the same alleged pre-sale misrepresentations pled as CFIL violations. (Mot. at 15). Plaintiffs' allegations of unfair business practices, however, take the UCL claim outside the scope of the CFIL. In *Quick Dispense*, the court held that the plaintiff's UCL claim was preempted by the CFIL, reasoning that the claim was premised upon the defendant's failure to register the franchise or to provide the requisite documents prior to sale of the franchise. 2024 WL 2925589, at *12. In contrast, Plaintiffs here allege that Defendant required franchisees to purchase equipment at an inflated cost, to contribute to an advertising fund utilized for Defendant's personal benefit and to utilize StoreSmart software, despite defects. (Compl. ¶ 95). Unlike the allegations in *Quick Dispense*, Defendant's alleged unfair business practices occurred *after* the signing of the Franchise Agreements. As such, Plaintiffs' UCL claim extends beyond the coverage of section 31201 and therefore is not preempted by the CFIL.

**C. Plaintiffs' UCL Claim (Count VII) Fails Under *Sonner***

Because Plaintiffs' UCL claim is not preempted by the CFIL, the Court next determines whether Plaintiffs' UCL claim should be dismissed because the Complaint fails to "plead[] facts showing that damages are unavailable, inadequate, or incomplete for those alleged injuries." (Mot. at 29). Defendant contends that Plaintiffs "may not pursue equitable remedies when an adequate remedy at law is available." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020). The Court agrees.

In *Sonner*, the Ninth Circuit reviewed the dismissal of a class action bringing claims under the UCL and the Consumers Legal Remedies Act. *Id.* at 837. There,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Sonner had "voluntarily dismissed her sole state law damages claim and chose to proceed with only state law equitable claims for restitution and injunctive relief," so the action would be tried as a bench trial. *Id*. Sonner sought the same amount in restitution as she had previously sought in damages, but "the district court dismissed her claims for restitution because an adequate remedy at law, i.e., damages, was available." *Id*. The Ninth Circuit affirmed, finding that Sonner had not established an inadequate legal remedy. *Id*. at 844. The Ninth Circuit observed that the operative complaint "fail[ed] to explain how the same amount of money" as Sonner previously sought in damages "for the exact same harm [was] inadequate or incomplete." *Id*. at 844.

Since *Sonner*, California district courts have held that plaintiffs facing dismissal "must, at a minimum, plead that [they] lack[] adequate remedies at law if [they] seek[] equitable relief." *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) (collecting cases). That is, plaintiffs must include in the complaint "substantive allegations that they lack an adequate legal remedy." *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 769 (C.D. Cal. 2022) (quotation omitted).

Here, Plaintiffs fail to allege that they lack an adequate remedy at law, because Plaintiffs do not explain or plead why damages sought elsewhere in the Complaint are inadequate to compensate for the alleged injuries.

Accordingly, the Court **GRANTS** the Motion as to Count VII (UCL claim). Plaintiffs' UCL claim is **DISMISSED** without prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

### D. Failure to Identify Specific Contractual Provisions Allegedly Breached (Count III, IV)

Defendant contends that Plaintiffs fail to identify a specific contractual promise that Defendant violated.  (Mot. at 22–23).  Under South Carolina law, a breach of contract claim requires a plaintiff to prove (1) the existence of a contract, (2) its breach and (3) the damages caused by such breach.  *Fuller v. Eastern Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962) (citation omitted).

 "[A] court's ultimate duty is confined to interpreting the contractual provisions agreed to by the parties–regardless of their wisdom or folly, apparent unreasonableness, or any failure of the parties to guard their interests carefully."  *Maybank v. BB&T Corp.*, 787 S.E.2d 498, 515 (S.C. 2016) (citation omitted).  "If a contract's language is unambiguous, the plain language will determine the contract's force and effect."  *N. Am. Rescue Prods., Inc. v. Richardson*, 769 S.E.2d 237, 240 (S.C. 2015).  Conversely, when a contract is ambiguous or capable of more than one construction, the question of what the contracting parties intended is one of fact that should be submitted to the jury.  *Café Assocs., Ltd. v. Gerngross*, 406 S.E.2d 162, 164 (S.C. 1991) (citation omitted).

As to Count III, Plaintiffs have failed to sufficiently plead a plausible breach of contract claim.  Here, Plaintiffs allege that Defendant breached section 11.5 of the Franchise Agreements by failing to provide (i) an adequate and properly functioning point-of-sale system and computer system and (ii) adequate support for the StoreSmart POS system and computer software related issues.  (Compl. ¶ 76).  The plain language of section 11.5, however, does not create a guarantee for functionality nor support.  Section 11.5 states:

> Franchisee shall purchase and utilize computer and point-of-sale systems consisting of hardware and software in accordance with Franchisor's

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

> specifications . . .  In addition, Franchisee agrees to pay, to Franchisor or
> the designated vendor of franchisor's choice, a software and support fee of
> $200 to $400 per month for site license and the support of UNITS®
> operating software.

(Compl. at Ex. A at 101).

According to the plain language of section 11.5, Plaintiffs are required to purchase point-of-sale systems from Defendant.  The section expressly creates obligations imposed on Plaintiffs, not on Defendant.  Plaintiffs argue that section 6.3 and section 22.5 reinforce Defendant's obligation to provide support.  (Opp'n at 19–20).  The Court finds this argument unavailing.  Section 6.3 titled "Exclusive Relationship" is a restrictive covenant provision and states:

> Franchisee acknowledges and agrees that Franchisor's in-term and post-term restrictive covenants as set forth in this Agreement are necessary to protect the goodwill associated with the Marks, protect Franchisor's business methods which are conveyed to Franchisee through the Operations Manual, initial training, and ongoing support and assistance during the term of this Agreement, to protect investments made by other System franchisees in the System, and to protect against customer confusion as to the source and origin of the products and services provided through the franchised business.

(Compl. at Ex. A at 95, 134, 187).  Section 22.5 is a "Consent to Jurisdiction" provision and states:

> Franchisee acknowledges that this Agreement has been entered into in the State of South Carolina, and that Franchisee is to receive valuable and continuing services emanating from Franchisor's headquarters in South Carolina, including but not limited to training, assistance, support and the development of the System.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(*Id.* at 118, 157, 211).  Neither section supports Plaintiffs' allegation that Defendant breached section 11.5.  (Compl. at Ex. A at 118, 157, 211).  Therefore, the Court **GRANTS** the Motion as to Count III.

Accordingly, the Court **GRANTS** the Motion as to Count III (software-based breach of contract claim).  Plaintiffs' software-based breach of contract claim is **DISMISSED** without prejudice.

As to Count IV, Plaintiffs also fail to sufficiently plead a plausible breach of contract claim.  Plaintiffs allege that Defendant breached the Franchise Agreements by failing to utilize the National Advertising Fund contributions in the manner specified in the Franchise Agreements.  (Compl. ¶ 81).  Plaintiffs' Complaint does not refer to a specific Franchise Agreement provision as the basis for their allegation.  While Plaintiffs' Opposition states that Plaintiffs allege "a breach of Section 10.3.1 of the Franchise Agreements [sic] prohibition on using the National Advertising Fund for general operating expenses that are not reasonable or reasonably related to the administration of the Brand Fund," (Opp'n at 20-21), Plaintiffs must identify the specific contractual provision in their Complaint.  *See Glob. State Inv. USA, Inc. v. LAS Props., LLC*, No. 2:14-CV-4494-DCN, 2015 WL 1943370, at \*10 (D.S.C. Apr. 29, 2015) (dismissing a breach of contract claim under Rule 12(b)(6) where a plaintiff failed to identify in his complaint the specific contractual provision allegedly breached, thus precluding the court from drawing "a reasonable inference that a [defendant] is liable for a breach of contract").

Accordingly, the Court **GRANTS** the Motion as to Count IV (National Advertising Fund breach of contract claim).  Plaintiffs' National Advertising Fund breach of contract claim is **DISMISSED** without prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**E. <u>Breach of Implied Covenant of Good Faith and Fair Dealing Claim (Count V)</u>**

Defendant contends that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count V) is not cognizable under South Carolina law and fails to state a claim.  (Mot. at 24).

Under South Carolina law, the implied covenant of good faith and fair dealing "may not be relied on to create new contractual duties not expressly stated or fairly implied in the contract itself." *Road, LLC v. Beaufort Cnty.*, 902 S.E.2d 366, 372 (S.C. 2024).  The implied covenant is not an independent cause of action separate from a claim for breach of contract.  *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 597 S.E.2d 881, 884 (S.C. Ct. App. 2004).  Instead, an implied covenant claim is subsumed under a breach of contract claim.  *Toonder v. CCHN Grp. Holdings, Inc.*, No. 9:19-CV-935-BHH, 2020 WL 13622312, at *3 (D.S.C Feb. 7, 2020) (granting defendant's motion to dismiss where plaintiff alleged a cause of action for breach of contract and a separate cause of action for breach of the implied covenant of good faith and fair dealing).  The implied covenant should be viewed "as merely another term of the contract at issue." *King v. Carolina First Bank*, 26 F. Supp. 3d 510, 518 (D.S.C. 2014) (quoting *Rotec Servs. Inc.*, 597 S.E.2d at 884 (internal citation omitted)).

Here, Plaintiffs allege that Defendant breached the implied covenant of good faith and fair dealing by engaging in conduct that unfairly frustrated Plaintiffs' rights to receive the benefits of the Franchise Agreements and destroyed Plaintiffs' ability to enjoy the fruits of their bargain.  (Compl. ¶ 87).  Plaintiffs further allege that Defendant's conduct constituted a systematic pattern of unfair dealing designed to maximize its own profits at the expense of Plaintiffs' economic interests and contrary to the reasonable expectations of the parties.  (*Id.* ¶ 88).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Plaintiffs treat their implied covenant claim as an independent cause of action, while pleading separate causes of action for breach of contract in Counts III and IV. (*Id.* ¶ 87-89). Plaintiffs rely on *King v. Carolina First Bank* to argue that South Carolina courts recognize a standalone cause of action for breach of the implied covenant of good faith and fair dealing. (Opp'n at 22-23). Plaintiffs' argument is unpersuasive. In *Carolina First Bank*, the plaintiffs brought a breach of contract claim alleging that the defendant TD Bank instituted undisclosed overdraft practices in violation of their bank account agreements and the implied covenant of good faith and fair dealing. 26 F. Supp. 3d at 518. There, the court concluded that while "every contract [has] an implied covenant of good faith and fair dealing" under South Carolina law, "the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract." *Id.* The court clarified that "the implied covenant of good faith and fair dealing should be viewed "as merely another term of the contract at issue." *Id.* (*quoting RoTec Servs., Inc. v. Encompass Servs., Inc.*, 359 S.C. 467, 597 S.E.2d 881, 884 (2004)).

Accordingly, the Court **GRANTS** the Motion as to Count V (breach of implied covenant of good faith and Fair dealing). Plaintiffs' breach of implied covenant of good faith and fair dealing is **DISMISSED** without prejudice.

### F. Specific Performance for Accounting (Count VI)

Defendant contends that Plaintiffs' claim for specific performance for an accounting of the National Advertising Fund is a remedy, not an independent cause of action. (Mot. at 26). Under South Carolina law, an action for specific performance is one in equity. *Lewis v. Premium Inv. Corp.*, 568 S.E.2d 361, 362 (S.C. 2002). A court may order specific performance if: (1) a valid contract exists between the parties; (2) no adequate remedy at law exists for the breach; (3) specific performance is equitable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

between the parties; and (4) no fraud, accident or mistake infects the contract. *Time Warner Cable v. Condo Servs., Inc.*, 672 S.E.2d 816, 819 (S.C. Ct. App. 2009) (citing *King v. Oxford*, 318 S.E.2d 125, 129 (S.C. Ct. App. 1984)).

Here, Plaintiffs fail to allege facts in support of the second element. If, as Plaintiffs contend, Count VI is predicated on a breach of contract claim, (Opp'n at 23-24), Plaintiffs fail to allege that there is no adequate remedy at law for the breach. Plaintiffs assert that Count IV "also addresses UFG's National Advertising Fund obligations *but seeks damages*." (*Id.* at 24) (emphasis added). Plaintiffs argue that Count VI may be alternatively pled under Rule 8(d)(2), which permits parties to plead claims in the alternative. (*Id.*). Plaintiffs' argument is unpersuasive. The alternative pleading rule does not save Plaintiffs' failure to state a plausible claim for specific performance.

Accordingly, the Court **GRANTS** the Motion as to Count VI (specific performance for accounting). Plaintiffs' specific performance for accounting is **DISMISSED** without prejudice.

## G. **Plaintiffs' CFIL Claim (Count VIII) Fails under Rule 9(b)**

Plaintiffs allege that Defendant violated the CFIL under Cal. Corp. Code § 31202. Section 31202 states that "[i]t is unlawful for any person willfully to make any untrue statement of a material fact in any statement required to be disclosed in writing pursuant to Section 31101, or willfully to omit to state in any such statement any material fact which is required to be stated therein." Cal. Corp. Code § 31202. The elements for a claim under section 31202 are essentially the same as those required for common law fraud claims, including causation, a materially false statement or omission and the plaintiff's reasonable reliance. *Full Tilt Boogie*, 2022 WL 3018055, at \*11 (citing *Samica Enterprises, LLC,* 637 F. Supp. 2d at 723). "Rule 9(b)'s heightened pleading requirement demands that, when a claim sounds in fraud, the allegations regarding the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

purported fraud be specific enough to give the parties being accused of the fraudulent conduct notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Flip Flop Shops Franchise Co., LLC v. Neb*, No. CV 16-7259-JFW (EX), 2017 WL 2903183, at *3 (C.D. Cal. Mar. 14, 2017).

Here, Plaintiffs state that Defendant made untrue statements "required to be disclosed in the FDDs provided to Plaintiffs" and alleged that Plaintiffs relied on Defendant's FDDs. (Compl. ¶ 102, 107). Plaintiffs, however, fail to specify which FDDs each Plaintiff relied on and when each Plaintiff relied on those statements to meet Rule 9(b)'s heightened pleading standard. Therefore, the Court **GRANTS** the Motion as to Plaintiffs' CFIL claim (Count VIII). Plaintiffs' CFIL claim is **DISMISSED** without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion is **GRANTED**. Plaintiffs' claims are **DISMISSED** without prejudice and with leave to amend. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman*, 371 U.S. at 182). Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). If Plaintiffs wish to file an amended complaint, they are **ORDERED** to file such an amended complaint within twenty-one (21) days of the date of this Order that corrects the pleading deficiencies noted herein.

**IT IS SO ORDERED.**