UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCURRYFUNGE INC, et al.,

Plaintiffs,

v.

UNITS FRANCHISING GROUP, INC,

Defendant.
______________________________/

Case No. 2:25-cv-13577

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [7]**

Plaintiffs are three Michigan franchisees of Units Franchising Group ("Units"), a moving and portable storage business. They sued Units for fraudulent (or, in the alternative, negligent) misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of Michigan's franchise investment law. ECF No. 1. Defendant moved to dismiss the complaint in its entirety, based in part on a one-year contractual limitations period and in part for pleading insufficiency under Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the following reasons, the Court will grant the motion and dismiss the complaint without prejudice. But the Court will also grant Plaintiffs' request for leave to amend the complaint.

**BACKGROUND**[1]

Units Franchising Group is a South Carolina business that offers its franchisees the opportunity to operate "a distinctive self-storage rental and moving business" under the Units name and trademarks. ECF No. 1-2, PageID.180. Scurryfunge Inc., SE Michigan Storage, Inc., and GR Moving and Storage, LLC, are Michigan businesses that entered into separate franchise agreements with Units in 2022. ECF No. 1, PageID.2–3.

Before signing the franchise agreements, Plaintiffs reviewed a Franchise Disclosure Document that provided information about the franchisor's offerings, franchisees' obligations, and various costs. ECF No. 1-2. In the disclosure, Units represented that each franchise

> operates according to our proprietary system, the characteristics of which include: (a)branded containers (the "UNITS® Containers") and related equipment, including trucks and robo-lifts . . . (b) standards and specifications for the provision of mobile storage services; (c) distinctive signage; (d) sales techniques, and merchandising marketing, advertising, and inventory management systems; and (e) general procedures for operating and managing a mobile storage business.

*Id.* at PageID.185. A few aspects of the disclosure, franchise agreement, and parties' relationships are relevant to the case.

First, at a "discovery day" for potential franchisees that occurred after Plaintiffs received the disclosure but before they signed franchise agreements, Units allegedly agreed that franchisees would receive all revenue from the delivery charges

[1] The Court must view the complaint in the light most favorable to the Plaintiffs and presume that all well-pleaded factual allegations are true. *Bassett v. NCAA*, 528 F.3d 426, 430 (2008).

for long distance moves. ECF No. 1, PageID.5. But according to Plaintiffs, Units "has retained a majority of system-wide" revenue from long distance moves. *Id.*

Second, the franchise agreement required franchisees to "purchase and utilize computer and point-of-sale systems consisting of hardware and software . . . including Franchisor's designated software system." ECF No. 1-1, PageID.48. The software is subject to change, and franchisees are required to "accept and use any such changes." *Id.* at PageID.44. In the disclosure document, Units described the point-of-sale system as "proprietary software" used since 2005 that must be used "to conduct scheduling, dispatching, accounting, inventory management, receivable tracking, point-of-sale functions, and related activities." ECF No. 1-2, PageID.205. But the disclosure also acknowledged that Units "might not be able to alter the Proprietary Software Program and system to[ ]accommodate each and every franchisee of the System." *Id.* In that case, the franchisee would "only utilize the program as prescribed by" Units. *Id.*

Initially, Units required franchisees to use SiteLink software for $236.00 per month. ECF No. 1, PageID.8. Then in 2024, Units launched StoreSmart, a new software that Plaintiffs alleged was fraught with issues. *Id.* at PageID.7–8. Plaintiffs not only had to pay an initial, one-time $250.00 migration fee, but they also had to continue to pay to maintain the former SiteLink software "so that they [could] access necessary client information, which cannot be accessed through StoreSmart until this very day." *Id.* at PageID.8. Units permitted franchisees to keep SiteLink activated "to serve as a back-up during the transition." *Id.*

Third, the franchise agreement required Plaintiffs to contribute 2% of monthly gross sales to a national advertising fund. ECF No. 1-1, PageID.33. The advertising fund would be used for "producing, maintaining, administering, and directing consumer advertising." *Id.* at PageID.46. Units did not guarantee that a particular franchisee would benefit from the advertising, nor did it agree to spend a certain amount of money on advertising in a particular area. ECF No. 1-2, PageID.203. But Units did agree to prepare an accounting of the advertising fund annually and to provide a "high-level summary" of the accounting to franchisees upon request. ECF No. 1-1, PageID.46. Plaintiffs alleged that Units misused the advertising funds. For example, they alleged that in 2024, Units used $530,861.00, more than 50% of the contributions that year, to pay corporate salaries. ECF No. 1, PageID.10–11.

Finally, the franchise agreement required franchisees to purchase or lease a minimum number of modular self-storage containers, depending on the size of the franchisee's territory. The agreement permitted franchisees to "purchase Containers directly from Franchisor or lease Containers from a third-party provider, if available." ECF No. 1-1, PageID.38. But Plaintiffs alleged that Units forced them to purchase containers from a single "approved" vendor, and that the approved vendor sells containers at "in most cases, at least a 50% mark-up when compared to the cost advertised by other third-party vendors for the same containers." ECF No. 1, PageID.12. And even when Units approved a third-party vendor, Plaintiffs alleged that Units prevented them from contracting directly with the third-party vendor. *Id.*

at PageID.14–15. Instead, it required them to purchase any third-party products through Units at a higher cost. *Id.*

As a result of the issues described above, Plaintiffs sued Units and brought seven claims. Count I alleged fraudulent misrepresentation based on four statements by Units. *Id.* at PageID.15–19. Count II alleged negligent misrepresentation in the alternative based on the same four statements. *Id.* at PageID.19–21. Counts III and IV alleged breach of contract regarding the operating software and the usage of advertising funds, respectively. *Id.* at PageID.21–22. Count V alleged a breach of the implied covenant of good faith and fair dealing related to the operating software, advertising fund, and approval/rejection of vendors. *Id.* at PageID.23–24. Count VI requested an accounting, and Count VII alleged a violation of Michigan's franchise investment law. *Id.* at PageID.24–26. Defendant moved to dismiss the complaint. Plaintiffs responded in opposition to the motion and requested, in the alternative, that the Court grant leave to amend the complaint under Rule 15.

## LEGAL STANDARD

The Court must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts that exceed a speculative level of plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The Court must view the complaint in the most favorable light to the Plaintiff, presume all well-pleaded

factual assertions are true, and draw reasonable inferences in the nonmoving party's favor. *Bassett v. NCAA*, 528 F.3d 426, 430 (2008). The Court need not credit a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678.

In a Rule 12(b)(6) motion, courts can only "consider the [c]omplaint and any exhibits attached thereto . . . [and] items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430 (citation omitted); *see also Decoration Design Sols., Inc. v. Amcor Rigid Plastics USA, Inc.*, 553 F. Supp. 3d 424, 427 (E.D. Mich. 2021) (Murphy, J.). When a written instrument incorporated into the pleadings contradicts a factual allegation, the instrument controls and the contradicted allegation is not entitled to the presumption of truth. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012).

## DISCUSSION

Plaintiffs sued Units for fraudulent and negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and a violation of Michigan's franchise investment law. Defendant moved to dismiss the complaint and asserted three grounds. First, Defendant argued that a one-year contractual limitations period bars three of the claims. Second, it argued that the rest of the claims failed to state a claim under Rule 12(b)(6). Finally, Defendant also argued that the fraud-based claims fail to meet Rule 9(b)'s particularity requirement.

I. Misrepresentation Claims (Counts I and II)

In Counts I and II, Plaintiffs alleged that Units made four misrepresentations: (i) that the Units containers and equipment were proprietary; (ii) that franchisees would receive revenue from long distance moves; (iii) that the proprietary software was functional and operationally ready; and (iv) that the Units franchisees were profitable. ECF No. 1, PageID.15–18. Defendant moved to dismiss the claims because they are barred by the one-year contractual limitations period in the contract, failed to allege facts with adequate specificity under Rule 9(b); and failed to state a claim under Rule 12(b)(6). The Court agrees that the claims fail under Rule 9(b) and Rule 12(b)(6) but will not reach the limitations defense. The Court will first discuss the law that governs, then describe the relevant legal standards. The Court will then analyze each of the four alleged misrepresentations.

*A. Choice of Law*

The Court must first determine what law to apply to the substantive claim before determining whether the complaint actually stated one. "A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 65 (2013) (citing *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 494–96 (1941)).

Here, the parties disagree about what law should apply. Defendant argued that Michigan law should apply because fraudulent misrepresentation is a tort and, under Michigan's choice-of-law rules, Michigan law presumptively applies. But Plaintiffs argued that South Carolina law—the law identified in the choice of law

provision of the franchise agreement—should apply because the fraudulent misrepresentation claim relates directly to the franchise agreement, which contains that choice-of-law provision. Of course, the Court need not engage in a choice-of-law analysis if the "conflict" is false—that is, if the laws of the interested jurisdictions are either the same or would produce the same outcome. *See In re FCA US, LLC Monostable Elec. Gearshift Litig.*, 598 F. Supp. 3d 639, 649 (E.D. Mich. 2022).

Here, fraudulent misrepresentation claims are the same in all relevant respects under Michigan law and South Carolina law. *Compare Hord v. Env. Rsch. Inst.*, 463 Mich. 399, 404 (2000), *with M.B. Kahn Constr. Co. v. S.C. Nat'l Bank*, 275 S.C. 381, 384 (1980). Thus, the Court will apply the law of the forum because the outcome is the same under either state's law.[2] *Johnson v. Doodson Ins. Brokerage*, 1 F. Supp. 3d 776, 787 (E.D. Mich. 2014) (citing *Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005)).

---

[2] The Court will not reach the limitations defense Defendant raised, which was the only issue whose conclusion depends on the choice of law. The Court will dismiss the claims on other grounds. Deciding the contractual limitations question would require the Court to answer an open state-law question. The limitations issue hinges on whether South Carolina or Michigan law applies to the enforceability of contractual limitations periods: they are generally unenforceable in South Carolina and enforceable in Michigan. *Compare* ECF No. 15, PageID.476–477, *with* ECF No. 18, PageID.511–513. Under Michigan choice of law rules, which the Court sitting in diversity must apply, it is an open question whether a contractual limitations period is *substantive* such that the law identified in the choice-of-law provision in the contract applies, or *procedural* such that forum law—here, Michigan law—applies. *See U.S. Framing Int'l, LLC v. Continental Reat Estat Cos.*, No. 356163, 2022 WL 4587375 (Mich. Ct. App. Sept. 29, 2022).

*B. Legal Standards*

Under Michigan law, there are six elements of fraudulent misrepresentation. Plaintiffs must prove that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, it knew that it was false, or made the representation recklessly, without any knowledge of its truth, and as a positive assertion; (4) the defendant made the representation with the intention that it should be acted on by the plaintiff; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered injury due to his reliance on the representation.

*MacDonald v. Thomas M. Cooley L. Sch.*, 724 F.3d 654, 662 (6th Cir. 2012) (citing *Hord*, 463 Mich. at 404). Negligent misrepresentation requires most of the same elements. But defendants need only have made the misrepresentation negligently and need not have intended for plaintiff to act on it. *Cleveland Indians Baseball Co. v. N.H. Ins. Co.*, 727 F.3d 633, 641 (6th Cir. 2013) (citing *Law Offs. of Lawrence J. Stockler P.C. v. Rose*, 174 Mich. App. 14, 436 (Mich. Ct. App. 1989)). For present purposes, the Court will analyze the misrepresentation claims as one.

To survive a motion to dismiss, a plaintiff alleging "fraud or mistake" must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The special pleading rule requires plaintiffs "(1) to specify the allegedly fraudulent statements, (2) to identify the speaker, (3) to plead when and where the statements were made, and (4) to explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247–48 (6th Cir. 2012) (citation omitted).

State law fraud claims must meet Rule 9(b)'s heightened pleading standard. *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015). So too must state law negligent misrepresentation claims that "sound[] in fraud" according to state law. *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 752 (6th Cir. 2012); *Republic Bank*, 683 F.3d at 247. The Sixth Circuit has applied Rule 9(b) to negligent misrepresentation claims under Michigan law. *See DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 384 (6th Cir. 2015).

Although plaintiffs must identify the speaker, "[a] complaint that identifies a particular corporate defendant as well as the 'time, place, and content of the alleged misrepresentation' need not also identify the corporation's individual employee who made the alleged fraudulent misrepresentation." *Newberry v. Serv. Experts Heating & Air Conditioning, LLC*, 806 F. App'x 348, 362 (6th Cir. 2020) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.* 501 F.3d 493, 506 (6th Cir. 2007)).

*C. Individual Misrepresentations*

Plaintiffs alleged that four statements by Units constituted fraudulent or negligent misrepresentations. As pleaded, each suffers a defect under Rule 9(b), Rule 12(b)(6), or both. Accordingly, the Court will dismiss Counts I and II in their entirety without prejudice.

(i) Proprietary Containers and Equipment

The first misrepresentation Plaintiffs alleged was that the Units containers and equipment were proprietary. ECF No. 1, PageID.15. Plaintiffs alleged that the disclosure document advertised the Units franchise as a "**proprietary system**" that

includes "**proprietary, custom-built containers** . . . and related equipment." *Id.* at PageID.4. And they relied on the assurance that proprietary equipment would be provided. *Id.* The assurance was false because "there is nothing proprietary about the UNITS containers or related equipment"; instead, the containers and equipment are "manufactured and supplied by various third parties." *Id.* at PageID.16.

But the purportedly false statement—submitted in bold text throughout Plaintiffs' complaint—does not actually appear in the cited and appended document. *See Williams*, 498 F. App'x at 536 (explaining that when an allegation is contradicted by a document the complaint incorporates, the allegation is not entitled to the presumption of truth). Instead, the actual disclosure document, on the page Plaintiffs cited, states that the franchise operates according to a "proprietary system" that includes "*branded* containers . . . and related equipment." ECF No. 1-2, PageID.185 (emphasis added). Thus, according to the document Plaintiffs supposedly relied on, Defendant never advertised that it provided proprietary, custom-built containers.

It is true, however, that the disclosure document described a "proprietary system." *Id.* But the document defined the "proprietary system" by enumeration: "branded containers . . . and related equipment," "standards and specifications," "distinctive signage," "sales techniques[] and merchandising, marketing, advertising, and inventory management systems," and "general procedures for operating and managing." ECF No. 1-2, PageID.185. And Plaintiffs did not allege that any part of that "system," other than the non-existent promise for "proprietary, custom-built containers," was false. Thus, Plaintiffs did not explain "what made the statement

fraudulent." *See Republic Bank*, 683 F.3d at 247 (citation omitted). Accordingly, Plaintiffs failed to state a claim for fraudulent or negligent misrepresentation as to the first statement.

(ii) Revenue Allocation for Long Distance Moves

The second alleged misrepresentation was that Plaintiffs would receive all revenue from delivery charges for long distance moves. ECF No. 1, PageID.16. But nothing in the complaint indicates when or where the statements were made, nor does it adequately allege who made them. The only paragraph of the complaint related to the statement alleged that Units misrepresented the revenue allocation "during Discovery Day—after Plaintiffs acknowledged receipt of their respective [disclosure documents] but before they signed their respective Franchise Agreements." *Id.* at PageID.5.

The allegation lacks the specificity Rule 9(b) requires. First, Plaintiffs did not allege when or where "Discovery Day" occurred. Second, it is unclear from the complaint whether there was a separate "Discovery Day" for each Plaintiff or whether there was a single event that all Plaintiffs attended. Plaintiffs signed their "respective" agreements at different months—February, May, and September—of 2022. *Id.* at PageID.2–3. And because Plaintiffs did not allege when any of them received their "respective" disclosure documents, all that is apparent from the complaint is that Defendant misrepresented the allocation of revenue from long distance moves at one or more "Discovery Days" sometime in or before 2022. Courts are occasionally lenient toward plaintiffs who "do not specify the exact dates"

statements were made if "the alleged wrong did not occur at a discrete time and place and instead 'the transactions involved [were] complex or cover[ed] a long period of time.'" *Alsbrook v. Condore Career Colleges, Inc.*, 469 F. Supp. 3d 805, 844 (W.D. Tenn. 2020) (citation omitted). But here, there is no such longevity or complexity. The claim is therefore insufficient under Rule 9(b).

(iii) Third Representation: Software

Third, Plaintiffs alleged that Defendant falsely represented its software's "functionality and operational readiness." *Id.* at PageID.15–16. Plaintiffs' argument is that when Defendant represented that its software had been used since 2005, they reasonably believed any software system it implemented in the future would be fully functional. But "the latest software introduced by" Defendant in 2023 and implemented in 2024 "is not fully functional and fails to meet these basic minimum operational requirements." *Id.* at PageID.7.

Plaintiffs' allegation fails to state a claim because it does not meet at least two requirements of a material representation—that the representation was false and that the plaintiff acted in reasonable reliance on the representation. *See MacDonald*, 724 F.3d at 662. The statement itself was that the "proprietary software" "ha[d] been used by [Units's] affiliates in the operation of a similar business since January of 2005." ECF No. 1-2, PageID.205. But nowhere in the complaint did Plaintiffs allege that the statement was false. Accordingly, even if all of Plaintiffs' allegations are true, Defendant did not make a "representation [that] was false." *MacDonald*, 724 F.3d at 662.

Instead, Plaintiffs alleged the statement "led [them] to believe" that (1) the system in place at the time was "fully functional, operational, and free of defects/glitches," and (2) that "any software system imposed by [Units] would be fully functional and benefit their business by facilitating and performing basic everyday tasks." ECF No. 1, PageID.7. But Plaintiffs' incorrect beliefs, even if reasonable, are not material representations for which Defendant may be held liable.

Furthermore, the allegation also fails because there is no reasonable reliance. As explained above, the basis of Plaintiffs' argument is that a software system implemented *after* they entered the franchise agreements was defective. But the franchise agreement explicitly reserved Defendant's right to modify the software system at its discretion and obliged each franchisee to "make such expenditures as such changes . . . may require." ECF No. 1-1, PageID.44. The modification provision thus defeats any reasonable reliance based on a prior software system.

(iv) Fourth Representation: Profitability

The final purported misrepresentation concerned "franchisee profitability." ECF No. 1, PageID.16. Plaintiffs alleged that "the average annual gross profit margin for franchisees systemwide has steadily declined since 2019" and that Units "failed to address the overall decline." *Id.* at PageID.5. Thus, Defendant's "representations regarding franchisee profitability were materially misleading." *Id.* at PageID.16.[3]

---

[3] Plaintiffs did not discuss the profitability representation in their response to the motion to dismiss. *See* ECF No. 15, PageID.481–484.

Like the third representation, the fourth fails because Plaintiffs did not allege an affirmative representation that was false. They did not claim that any of the franchise disclosure statements was false; instead, they argued that Defendant "failed to adequately explain or address" the decline. But there are several problems with the argument. For one, failure to address a trend is not a material misrepresentation. *Bradley v. Westfield Ins. Co.*, No. 36528, 2024 WL 3380920, at *4 (Mich. Ct. App. July 11, 2024) ("A failure to provide information that is not requested does not constitute a misrepresentation, let alone fraud."). And more importantly, Defendant allegedly failed to address a trend from 2018–2024, but Plaintiffs entered into their franchise agreements (i.e., relied on the "misrepresentation") in 2022. ECF No. 1, PageID.2–3, 5. Plaintiffs could not have relied on any representation to their detriment if not only the representation itself but also the facts that supposedly made it false were unknown until 2024.

True, Plaintiffs alleged that the average annual gross profit margin for franchisees fell from 36.9% for calendar year 2018 to 29.8% for calendar year 2021, and it is possible that Defendant knew of the trend before Plaintiffs signed their franchise agreements. *Id.* at PageID.5. But Plaintiffs did not plead fraudulent concealment or explain why any failure to address the decline in profit margin constituted a false statement.

Even if Plaintiffs had alleged that Defendant told them the investment would be profitable, the statement would likely be an opinion not actionable for fraud. *See Van Tassel v. McDonald Corp.*, 159 Mich. App. 745, 750 (Mich. Ct. App. 1987). And

Plaintiffs' agreement contained an integration clause that would make reliance on any claim of profitability from outside the contract unreasonable. ECF No. 1-1, PageID.63, 67; *see Cook v. Little Caesar Enters.*, 210 F.3d 653, 656, 659 (6th Cir. 2000). The claim thus falls short of the specificity required by Rule 9(b).

II. Breach of Contract and Accounting Claims

Counts III and IV alleged breach of contract regarding the operating software and the usage of advertising funds, respectively. *Id.* at PageID.21–22. Defendant moved to dismiss them based on the one-year contractual limitations period and for failure to state a claim. ECF No. 7, PageID.428, 439–442. As explained above, the Court will not consider the contractual limitations issue. Nonetheless, the contract claims must be dismissed for failure to state a claim. And the Court will deny Plaintiffs' separate count for accounting based on the second contract claim.

The parties agree that South Carolina law governs the contract claims according to the choice of law provision in their contracts. ECF No. 1-1, PageID.64–65. Applying Michigan's choice-of-law rules, *see Klaxon v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), the Court agrees: The parties chose South Carolina law in their franchise agreement, South Carolina bears a substantial relationship to the parties, and there is a reasonable basis for choosing its law. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 125 (1995) (adopting §§ 187 and 188 of the Second Restatement of Conflicts). Under South Carolina law, a plaintiff alleging breach of contract must establish (1) the existence of a contract, (2) breach, and (3) damages

caused by the breach. *Montgomery Holdings, LLC v. Merlo*, 447 S.C. 502, 515 (S.C. Ct. App. 2026).

*A. Operating Software*

Count III alleged that § 11.5 of the franchise agreement created an obligation for Units to provide "an adequate and properly functioning point-of-sale system" as well as "adequate support" for that system. ECF No. 1, PageID.21. And because of the issues with the StoreSmart system, Defendant purportedly breached its contractual obligation to provide a functioning system. *Id.* at PageID.8–11.

Defendant argued that Plaintiffs "recast generalized business grievances" as breaches and failed to identify a contractual term that Defendant breached. ECF No. 7, PageID.440. Plaintiffs responded that § 11.5 of the franchise agreement creates an obligation for Defendants to provide properly functioning software because it requires Plaintiffs to utilize the provided software. ECF No. 15, PageID.489. Plaintiffs also pointed to two different provisions of the franchise agreement as reinforcing Defendant's obligation: § 6.3 supposedly requires Defendants to provide "ongoing support and assistance," and § 22.5 purportedly promises that Defendant will provide "valuable and continuing services." *Id.* at PageID.490; ECF No. 1-1, PageID.65. None of the provisions Plaintiffs cited creates an obligation that was breached by Defendant.

Section 11.5 obliges the franchisee to purchase and use Units's "designated software system," to "pay all . . . ongoing fees" for the software, and to grant Units access to point-of-sale data. ECF No. 1-1, PageID.100. Nowhere does the agreement

promise that Defendant will furnish a system of particular functionality or provide a particular level of ongoing support for it. To the contrary, the disclosure document provides that franchisees "will have the sole and complete responsibility for: 1) the acquisition, operation, maintenance and upgrading of the computer hardware and software; and 2) any and all consequences that may arise if the computer hardware or Software is not properly operated, maintained and upgraded." ECF No. 1-2, PageID.205. While § 11.5 may imply some obligation to provide software, it does not guarantee a certain level of functionality that Defendant breached. *See Reynolds v. Stockman*, 109 S.C. 112, 115 (1918) (noting that an obligation "may sometimes be implied from the contract as a whole or from the circumstances" but that "where it is not necessary to a fair and reasonable construction of the contract of when it is not reasonably plain and clear that it was the intention of the parties," courts should not imply it).

The other two provisions of the agreement are similarly unhelpful for Plaintiffs. First, § 6.3 titled "Exclusive Relationship" is a restriction on franchisees; it bars them from diverting business to or holding an interest in a "Competitive Business." ECF No. 1-1, PageID.42. It imposes no obligations on Units. The phrase Plaintiffs cited reads, in context, that the "franchisee acknowledges and agrees that Franchisor's . . . covenants as set forth in this Agreement are necessary to . . . protect the Franchisor's business methods which are conveyed to Franchisee through," in part, "**ongoing support and assistance**." *Id.* (emphasis added). Even if the provision did create an obligation for Defendant, Plaintiffs did not state a claim for

breach because they did not allege that they requested but were denied any "support." The § 22.5 argument is weaker: It is a "Consent to Jurisdiction" provision, and its reference to "continuing services . . . including . . . **training, assistance, [and] support**" establishes a basis for personal jurisdiction of franchisees in South Carolina. *Id.* at PageID.117. It refers to services already explained in the contract, and like § 6.3, it does not create any additional obligations for Defendant.

The absence of any performance or support obligation for Defendant requires the Court to dismiss Count III. Defendant cannot have breached a promise it never made. *See also So Cal Storage, LLC v. UNITS Franchising Grp., Inc.*, No. 2:25-cv-10222, 2026 WL 2045621, at *9–10 (C.D. Cal. July 9, 2026) (dismissing identical claim against the same defendant for failure to identify an obligation it breached).

*B. Usage of Advertising Funds*

Count IV also alleged breach of contract based on Defendant's alleged improper use of the national advertising fund. The franchise agreement required franchisees to contribute 2% of monthly gross sales to a national advertising fund. ECF No. 1-1, PageID.33. According to the agreement, the fund contributions "may be used to meet the costs of producing, maintaining, administering, and directing consumer advertising." *Id.* at PageID.46. But Plaintiffs alleged that Defendant breached its obligations for two reasons. ECF No. 1, PageID.22. First, they alleged that Defendant failed to utilize the advertising contributions in the manner specified in the franchise agreement, instead spending over half of the total contributions on corporate salaries. *Id.* at PageID.10–11. Second, they alleged that Defendant failed to provide an annual

accounting for the advertising fund as the franchise agreement supposedly required. *Id.*

(i) Use of Advertising Fund Contributions

Plaintiffs failed to identify a contractual provision that restricts Defendant's use of advertising fund contributions. They alleged that Defendant breached the agreement "by failing to utilize the National Advertising Fund contributions in the manner specified in the Franchise Agreements." *Id.* at PageID.22. But the complaint failed to state what the "manner specified" is or where the agreement specified it. *See id.* at PageID.10–11; s*ee also So Cal Storage, LLC*, 2026 WL 2045621, at *10.

Plaintiffs' response cited § 10.3.1 of the agreement, a provision not cited in the complaint. ECF No. 15, PageID.490–91. It provides that advertising funds

> shall not be used to defray any of Franchisor's general operating expenses, except for such reasonable costs and expenses, if any, that Franchisor may incur in activities reasonably related to the administration of the National Advertising Fund, including, but not limited to, the salaries of employees who manage marketing agencies, administer the National Advertising Fund, or directly create marketing materials or tools.

ECF No. 1-1, PageID.46. Even if Plaintiffs' response could supply the missing provision, they did not allege that the use of the funds contradicted § 10.3.1. They complained that more than half the funds were used to pay salaries, but the agreement expressly permits such use. And Plaintiffs provided no additional allegations to make it plausible that funds were used in a way that the agreement forbids. As pleaded, the complaint "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557.

Plaintiffs correctly argued that whether the expenditure of over 50% of fund contributions on corporate salaries was a "reasonable" expense "reasonably related to the administration" of the advertising fund is a question of fact. ECF No. 15, PageID.491. But Plaintiffs did not plead facts that make it plausible that the expenditures they identified breached any obligation created by § 10.3.1.

(ii) Annual Accounting for Use of Advertising Fund

Plaintiffs' second breach of contract theory related to the advertising fund posits that Defendant breached its obligation to provide an accounting. Section 10.3.4 of the agreement requires that an accounting of the fund "shall be prepared annually" and that a "high-level summary shall be available to Franchisee upon request." ECF No. 1-1, PageID.46. Plaintiffs sought "transparency" on Defendant's use of the funds and believed that, under the agreement, they "are entitled to an ***accurate*** accounting" of the fund and "cannot be expected to rely on the unverified and unsupported summary data" Defendant provided. ECF No. 1, PageID.11.

The agreement on its face does not entitle Plaintiffs to the accounting itself. Rather, it requires that Defendant provide a "high-level summary." Indeed, Plaintiffs conceded that they received "summary data." *Id.* Plaintiffs did not point to any provision of the franchise agreement that requires Defendant to provide them with an accounting—the provision only recites that Defendant must perform one. ECF No. 1-1, PageID.46. And failure to provide more than the contract requires is not a breach.

Plaintiffs also alleged that Defendant's income statement was inconsistent with the disclosure document for the same year, ECF No. 1, PageID.10–11, but again, they did not identify any obligation Defendant breached, and they did not put forth any allegations that make it more than a mere possibility that Defendant misused advertising funds in violation of the agreement.

*C. Accounting (Count VI)*

Plaintiffs pleaded accounting as a separate count, ECF No. 1, PageID.24–25, but clarified in response to the motion to dismiss that Count VI "is not an independent equitable claim—it is a breach of contract claim seeking enforcement of Defendant's express contractual obligation to prepare an accounting." ECF No. 15, PageID.495. The Court appreciates the clarification. Still, Count VI must fail for the same reasons the Court will dismiss Count IV.

III. Breach of Implied Covenant of Good Faith and Fair Dealing

Count V alleged a breach of the implied covenant of good faith and fair dealing related to the operating software, advertising fund, and approval/rejection of vendors. ECF No. 1, PageID.23. Defendant argued that Plaintiffs' claim is not cognizable under South Carolina law and otherwise failed to state a claim. ECF No. 7, PageID.442–443.

Under South Carolina law, "the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract." *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 359 S.C. 467, 473 (S.C. Ct. App. 2004). Courts applying South Carolina law regularly dismiss separate claims based on the

implied covenant. *See, e.g.*, *Clark v. GPM Investments, LLC*, No. 2:21-1033, 2021 WL 9968197, at *2 (D.S.C. May 5, 2021); *Synovus Bank v. Stevens L. Firm*, No. 4:19-cv-01411, 2020 WL 12788154, at *7 (D.S.C. July 20, 2020).

Plaintiffs disagreed and cited *King v. Carolina First Bank*, 26 F. Supp. 3d 510, 518 (D.S.C. 2014). ECF No. 15, PageID.487. But in *King*, the plaintiffs did not plead a separate implied covenant count; they pleaded a single breach of contract claim and alleged that a bank's practice violated the agreement and the covenant implied within it. The district court held only that the plaintiffs "sufficiently alleged a breach of contract and/or the implied covenant of good faith and fair dealing claim." *Id.* at 518. But here, Plaintiffs brought separate breach of contract claims. Accordingly, the general rule from *RoTec* that the implied covenant "is not an independent cause of action" applies and requires dismissal of the claim. *See also So Cal Storage*, 2026 WL 2045621, at *11–12.

IV. Michigan Franchise Investment Law

Finally, Plaintiffs alleged that Defendant made four "untrue statements of material fact" in its disclosure document and thereby violated Michigan's franchise investment law. ECF No. 1, PageID.25. They alleged that Defendant (i) represented its franchise as a "proprietary system" without any proprietary features, (ii) misrepresented the franchise's profitability and overall financial performance; (iii) misrepresented that advertising fund contributions would fund advertising, and (iv) failed to disclose its financial relationship with various vendors from whom

franchisees were forced to purchase goods and services. ECF No. 1, PageID.25. The Court will address each in turn.

Michigan's Franchise Investment Law prohibits persons from making "any untrue statement of a material fact" or omitting a material fact that is necessary to prevent the statement from being misleading in context. Mich. Comp. Laws § 445.1505(b). It also prohibits "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." *Id.* § 445.1505(c).

*A. Proprietary System, Profitability, and Advertising Fund*

The proprietary system and profitability allegations fail for the same reasons the similar misrepresentation claims failed under Count I. *See supra* Part I(C)(i), (iv). Plaintiffs did not identify any misrepresentations or actionable omissions regarding proprietary equipment or profitability that they relied on when they entered into the franchise agreement. Similarly, the advertising fund allegation fails for the same reasons the breach of contract claim failed under Count III. Namely, Plaintiffs failed to identify a provision of the contract that restricts Defendant's use of advertising fund contributions. *See supra* Part II(B)(i). Thus, for those reasons and the ones set forth above, Plaintiffs failed to state a claim under Michigan's Franchise Investment Law. *See Cook v. Little Caesar Enters.*, 210 F.3d 653, 659 (6th Cir. 2000).

*B. Disclosure of Financial Relationship with Vendors*

The only unique claim in the Complaint under the Michigan Franchise Investment Law is that Defendant failed to disclose "the financial terms and benefits it received" from vendors or that "franchisees were forced to purchase non-proprietary

goods and services from [the vendors] at an inflated price." ECF No. 1, PageID.26. Section 445.1505(b) makes it unlawful to "omit to state a material fact" when the material fact is necessary to render another statement not misleading under the circumstances.

Here, Plaintiffs did not plead that the omission made any other statements misleading under the circumstances. Their claim appears to be that the franchise agreement's provision permitting franchisees to purchase containers "from a third-party provider, if available," was misleading because Defendant neglected to disclose its financial relationship with third parties, and that franchisees paid inflated prices for the goods and services. *Id.* at PageID.12. But the availability of third-party equipment was not promised, and Plaintiffs accordingly could not have relied on the omission to their detriment in entering the franchise agreement. *See Cook*, 210 F.3d at 659.

## CONCLUSION

The Court will grant the motion to dismiss the claims for failure to state a claim or failure to meet the heightened pleading standard under Rule 9(b). But because the claims fail for pleading insufficiency, the dismissal is without prejudice. What is more, Plaintiffs requested leave to amend the complaint pursuant to Rule 15, which requires that the court grant leave "freely" and "when justice so requires." Fed. R. Civ. P. 15(a)(1)(B). Because Plaintiffs could potentially cure their defects with an amended pleading, the Court will grant leave to amend.

**WHEREFORE**, it is hereby **ORDERED** that the motion to dismiss [7] is **GRANTED**. The claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs may **FILE** an amended complaint **no later than twenty-one days from the entry of this order**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 25, 2026