**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| SCURRYFUNGE INC., SE MICHIGAN STORAGE, INC. and GR MOVING AND STORAGE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>UNITS FRANCHISING GROUP, INC.,<br><br>Defendant. | Case No.: 2:25-cv-13577-SJM-DRG<br>Honorable Stephen Joseph Murphy III<br>Magistrate Judge David R. Grand |

**DEFENDANT UNITS FRANCHISING GROUP, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED R. CIV. P. 12(b)(6) AND 9(b)**

Defendant Units Franchising Group, Inc. ("UFG"), by and through its attorneys, moves this Court for an order dismissing Plaintiffs' First Amended Complaint, ECF No. 22, with prejudice under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

The Motion is based on UFG's Brief in Support; the pleadings and papers on file in this action, including the Franchise Agreements and Franchise Disclosure Documents incorporated into and attached to the FAC; all matters the Court may consider at the pleading stage; and such oral argument as the Court may allow.

Pursuant to E.D. Mich. LR 7.1(a), counsel for UFG sought concurrence from Plaintiffs' counsel on September 28, 2026, explained the nature of this Motion and

its legal basis, and requested concurrence. Plaintiffs did not concur in the relief requested.

WHEREFORE, UFG respectfully requests that the Court dismiss the First Amended Complaint with prejudice and grant such other and further relief as the Court deems just.

Respectfully submitted

Dated: September 29, 2026

/s/ Peter G. Siachos
Peter G. Siachos (admitted to practice)
Clair E. Wischusen (admitted to practice)
Cara Swindlehurst (P79953)
GORDON REES SCULLY
MANSUKHANI, LLP
37000 Woodward Avenue, Suite 225
Bloomfield Hills, MI 48304
Tel: (313) 426-9815
psiachos@grsm.com
cwischusen@grsm.com
cswindlehurst@grsm.com
*Attorneys for Defendant Units Franchising Group, Inc.*

**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| SCURRYFUNGE INC., SE MICHIGAN STORAGE, INC. and GR MOVING AND STORAGE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>UNITS FRANCHISING GROUP, INC.,<br><br>Defendant. | Case No.: 2:25-cv-13577-SJM-DRG<br>Honorable Stephen Joseph Murphy III<br>Magistrate Judge David R. Grand |

**BRIEF IN SUPPORT OF DEFENDANT UNITS FRANCHISING GROUP, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED R. CIV. P. 12(b)(6) AND 9(b)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... iii

ISSUES PRESENTED ..... vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT ..... vii

INTRODUCTION ..... 1

FACTUAL AND PROCEDURAL BACKGROUND ..... 2

LEGAL STANDARD ..... 4

ARGUMENT ..... 5

I. The Fraud-Based Claims Still Plead No Actionable Misrepresentation or Concealment. ..... 5

A. The FDD's supply disclosure does not mean manufacturers cannot sell similar products to others. ..... 5

B. The software allegations still do not plausibly show that the identified FDD statement was false or reasonably relied upon. ..... 8

C. Count II does not plead the duty or particularity required for Michigan silent fraud. ..... 9

D. The negligent representation claim fails with the same predicates. ..... 10

II. The Contract-Based Claims Do Not Adequately Plead a Breach. ..... 11

A. Count IV still does not plausibly plead prohibited NAF expenditures or a Plaintiff-specific accounting breach. ..... 12

B. Count V does not plausibly allege a breach of Section 12.2's pricing, profit or delivery obligations. ..... 13

C. Section 21.14 cannot be used to override the Franchise Agreements' specific grants of authority. ..... 14

III. Count VIII Still Does Not State an MFIL Claim. ....17

IV. The LDM Claims Fail Under the Text of the Franchise Agreements and South Carolina Restitution Law. ....19

A. Count IX omits UFG's express discretion. ....20

B. Count X cannot use unjust enrichment to obtain LDM compensation the Franchise Agreements do not promise. ....21

V. The New Consumer Protection Claims Fail as a Matter of Law. ....22

A. The SCUTPA Claim Alleges No Deceptive Practice Affecting the Public-Interest and No South Carolina Nexus. ....22

B. Count XII falls outside the MCPA because the challenged purchases were commercial. ....24

VI. Further Leave to Amend Should Be Denied. ....24

CONCLUSION ....26

CERTIFICATE OF SERVICE ....26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Adams v. G.J. Creel & Sons, Inc.*,
320 S.C. 274, 465 S.E.2d 84 (1995) ........ vii, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ vii, 4

*Bassett v. NCAA*,
528 F.3d 426 (6th Cir. 2008) ........ 4

*Brown v. Chapman*,
814 F.3d 436 (6th Cir. 2016) ........ 25

*Cleveland Indians Baseball Co. v. N.H. Ins. Co.*,
727 F.3d 633 (6th Cir. 2013) ........ 10

*Compuware Corp. v. Moody's Invs. Servs., Inc.*,
273 F. Supp. 2d 914 (E.D. Mich. 2002) ........ vii

*Cook v. Little Caesar Enters., Inc.*,
210 F.3d 653 (6th Cir. 2000) ........ vii, 18

*Crosby v. Twitter, Inc.*,
921 F.3d 617 (6th Cir. 2019) ........ vii

*DBI Invs., LLC v. Blavin*,
617 F. App'x 374 (6th Cir. 2015) ........ 11

*Foman v. Davis*,
371 U.S. 178 (1962) ........ 25

*Frank v. Dana Corp.*,
547 F.3d 564 (6th Cir. 2008) ........ 4

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
406 F. Supp. 3d 618 (E.D. Mich. 2019) ........ 25

*Golf Village N., LLC v. City of Powell*,
14 F.4th 611 (6th Cir. 2021) ........ vii

*Grant v. Mount Vernon Mills, Inc.*,
370 S.C. 138 (Ct. App. 2006) ........................................................................20

*Hord v. Env't Rsch. Inst. of Mich.*,
463 Mich. 399, 617 N.W.2d 543 (2000)..........................................................9

*Johnson v. Rocket Mortgage, LLC*,
No. 23-13251, 2024 WL 2750001 (E.D. Mich. May 29, 2024)........................25

*Key Co. v. Fameco Distribs., Inc.*,
292 S.C. 524, 357 S.E.2d 476 (Ct. App. 1987) ...............................................22

*M&D, Inc. v. W.B. McConkey*,
231 Mich. App. 22 (1998) ...............................................................................10

*MacDonald v. Thomas M. Cooley Law Sch.*,
724 F.3d 654 (6th Cir. 2013) ...................................................................... vii, 9

*Montgomery Holdings, LLC v. Merlo*,
447 S.C. 502 (Ct. App. 2026) ..........................................................................12

*Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*,
290 S.C. 475, 351 S.E.2d 347 (Ct. App. 1986) .........................................22, 23

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012) ................................................................. vii, 5, 7

*Road, LLC v. Beaufort Cnty.*,
443 S.C. 11 (2024)...........................................................................................15

*Slobin v. Henry Ford Health Care*,
469 Mich. 211 (2003) ......................................................................................24

*State v. Wilson*,
274 S.C. 352, 264 S.E.2d 414 (1980) ............................................................ vii

*Swanson v. Stratos*,
350 S.C. 116, 564 S.E.2d 117 (Ct. App. 2002) ...............................................21

*Turner v. Rams Head Co.*,
No. 3:05-2251-MBS, 2007 WL 2579386 (D.S.C. Sept. 4, 2007) ......................21

*Williams v. CitiMortgage, Inc.*,
498 F. App'x 532 (6th Cir. 2012) ........................................................ vii, 3, 4, 20

*Zine v. Chrysler Corp.*,
236 Mich. App. 261, 600 N.W.2d 384 (1999).................................................... vii

**Statutes**

Mich. Comp. Laws § 445.902(1)(g) ..................................................................24

Mich. Comp. Laws § 445.1505(a) ........................................................................7

Mich. Comp. Laws § 445.1505(b)....................................................................7, 19

Mich. Comp. Laws § 445.1505(c) ........................................................................7

S.C. Code Ann. § 39-5-10(b) ..............................................................................23

**Rules**

Fed. R. Civ. P. 8 ..................................................................................................7

Fed. R. Civ. P. 9(b) ...................................................................................*passim*

Fed. R. Civ. P. 12(b)(6).........................................................................................vi

Fed. R. Civ. P. 15 ................................................................................................25

Fed. R. Civ. P. 15(a)(2).........................................................................................25

Local Rule 7.1(d)(2)....................................................................................... vi, vii

**Regulations**

16 C.F.R. § 436.5(h) .............................................................................................6

16 C.F.R. § 436.5(h)(6).........................................................................................18

16 C.F.R. § 436.5(h)(8).........................................................................................18

**ISSUES PRESENTED**

*Eastern District of Michigan Local Rule 7.1(d)(2)*

1. Whether the First Amended Complaint ("FAC") should be dismissed under Fed. R. Civ. P. 12(b)(6) and 9(b) because Plaintiffs' amended fraud, contract, statutory and restitution theories remain contradicted by the documents they attach, fail to plead required elements, or seek obligations the Franchise Agreements do not impose?

UFG's Answer: Yes. The Court dismissed the original complaint in its entirety after identifying the pleading defects claim by claim. The FAC adds new allegations and retooled labels, but it does not cure the dispositive defects and, in several places, contradicts the very agreements on which it relies.

2. Whether dismissal should be with prejudice where Plaintiffs received a detailed ruling identifying their deficiencies and an express opportunity to amend, yet the amended pleading still fails and many defects are matters of contract text or law that further amendment cannot cure?

UFG's Answer: Yes. Repeated failure to cure identified defects and futility are recognized grounds to deny further leave, and the Sixth Circuit permits dismissal of an amended complaint with prejudice where no proper motion and proposed further pleading establishes a curable theory.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

*Eastern District of Michigan Local Rule 7.1(d)(2)*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

*Williams v. CitiMortgage, Inc.*, 498 F. App’x 532 (6th Cir. 2012).

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239 (6th Cir. 2012).

*MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654 (6th Cir. 2013).

*Compuware Corp. v. Moody’s Invs. Servs., Inc.*, 273 F. Supp. 2d 914 (E.D. Mich. 2002).

*Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 465 S.E.2d 84 (1995).

*State v. Wilson*, 274 S.C. 352, 264 S.E.2d 414 (1980).

*Cook v. Little Caesar Enters., Inc.*, 210 F.3d 653 (6th Cir. 2000).

*Zine v. Chrysler Corp.*, 236 Mich. App. 261, 600 N.W.2d 384 (1999).

*Crosby v. Twitter, Inc.*, 921 F.3d 617 (6th Cir. 2019).

*Golf Village N., LLC v. City of Powell*, 14 F.4th 611 (6th Cir. 2021).

## INTRODUCTION

This Court has already rejected Plaintiffs' attempts to construe Units' Franchise Disclosure Documents ("FDDs") as containing promises they did not make, found no contractual duties supporting Plaintiffs' software and National Advertising Fund ("NAF") theories, dismissed the separate good-faith count, and rejected the MFIL claim. Order, ECF No. 20, PageID.559–574. The court gave Plaintiffs a chance to "potentially cure" the defects plaguing the original complaint, but the FAC confirms they cannot. *Id*., PageID.574.

The FAC still characterizes disclosed conduct as concealed, substitutes conclusions "on information and belief" for facts and converts discretionary language into mandatory duties. Most starkly, Count IX changes Section 12.15's "may remit" Long Distance Moving ("LDM") service payments into "would remit," while omitting UFG's "sole right" to set LDM parameters. FAC ¶¶ 93, 153. As noted in the Order, the attached Franchise Agreements control.

The supplier theories suffer from the same fundamental flaw. Item 8 expressly disclosed that UFG was the sole approved source for specified UNITS equipment, and the Franchise Agreements expressly disclosed UFG's right to retain "volume rebates, markups, and other benefits from suppliers[.]" *Id*. ¶¶ 27, 35. That other manufacturers could sell similar products does not make those disclosures false, nor does it transform a disclosed franchise restriction into a concealed one.

The new consumer protection claims fail because neither the MCPA nor the SCUTPA reaches the conduct alleged. Count XI falls outside SCUTPA because the FAC alleges a private dispute between Michigan franchisees and UFG, not a deceptive practice affecting the public interest, and the supposed deception concerns purchasing restrictions and supplier-related benefits that were expressly disclosed. The FAC also identifies no South Carolina consumer, transaction or injury, and UFG's headquarters cannot supply the missing statutory nexus. Count XII fares no better under the MCPA. Plaintiffs are business entities that purchased equipment for use in commercial operations, not for personal or household purposes, and the MCPA expressly excludes franchise purchases. Plaintiffs cannot evade those statutory limits by recasting commercial transactions as consumer protection claims.

Plaintiffs were given an opportunity to amend, with the benefit of the Court's specific guidance, and failed to cure the defects in their claims. Their inability to state viable claims even with that opportunity makes clear that further amendment would be futile. The FAC should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 25, 2026, this Court dismissed every original claim. It held, among other things, that the FDD did not promise custom-built proprietary containers; Plaintiffs' LDM theory lacked Rule 9(b) particulars; the Franchise Agreements did not guarantee functioning software; Plaintiffs did not plausibly plead NAF misuse;

the 2022 FDD promised only a high-level NAF use summary; and the separate implied-covenant and MFIL counts failed. Order, ECF No. 20, PageID.559–574.

The FAC now asserts claims for misrepresentation or concealment (Counts I–III); breach of contract (Counts IV–VII and IX); consumer protection violations (Counts VIII, XI and XII); and unjust enrichment (Count X). The theories arise from the same allegations underpinning the deficient claims in the original complaint.

The FAC alleges that UFG franchises portable storage businesses. FAC ¶ 10. Plaintiffs are three Michigan entities operating UNITS franchises under separate Franchise Agreements. *Id*. ¶¶ 7–9. GR Moving received the 2021 FDD and executed UFG's 2021-form Franchise Agreement; Scurryfunge and SE Michigan received the 2022 FDD and executed UFG's 2022-form Franchise Agreement. *Id*. ¶¶ 22–24. The FAC attaches the Franchise Agreements and incorporates the FDDs, so those documents control where the allegations conflict with their terms. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012).

The Franchise Agreements define the parties' franchise relationship and allocate the rights at issue. They authorize UFG to modify the UNITS System; require franchisees to adopt designated software and equipment and purchase products from UFG or approved suppliers; permit UFG and its affiliates to retain rebates, markups and other vendor benefits; give UFG discretion over supplier approval; allow UFG to earn a reasonable profit on UNITS products; prescribe

advertising obligations; and disclaim any guarantee that NAF expenditures will benefit franchisees proportionately. FAC Ex. A, 2022 Franchise Agreement §§ 4.4, 9.2,10.3, 11.5, 12.1, 12.2, PageID.654, 662, 664, 666-668.

The Franchise Agreements also reserve UFG's right to sell UNITS services through alternate channels and provide that franchisees had no right to distribute or profit from those services. *Id.* §§ 1.5.3, 1.5.5, PageID.650. The Agreements define long-distance moves as moves between two UNITS territories, designate UFG as the sole approved LDM provider, authorize UFG to require franchisees to use UFG or its designees, permit UFG to establish and collect its rates, and give UFG the sole right to prescribe the program's parameters. *Id.* §§ 1.4, 1.5.3–1.5.5, 12.15, PageID.649-650, 669-670. It also permits UFG to collect customer payments directly and remit any payment to franchisees after deducting the fees, costs, and expenses associated with the services provided. *Id.* § 12.15, PageID.669-670.

## LEGAL STANDARD

A complaint must plead facts stating a plausible claim; labels and legal conclusions do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The Court may consider attached and incorporated documents, and where they contradict an allegation, the written instrument controls. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008); *Williams*, 498 F. App'x at 536. Rule 9(b) requires plaintiffs to identify the statement, speaker, time, place and why the statement was misleading.

*Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). Fraud by omission requires allegations of precisely what was omitted, who should have disclosed it, how the omission was misleading, and what the defendant obtained. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012).

## ARGUMENT

### I. The Fraud-Based Claims Still Plead No Actionable Misrepresentation or Concealment.

Counts I–III rely on the exclusive-source and required-purchase revenue disclosures in Item 8 of the FDD, Item 11's UNITS Operating Software disclosure, and post-sale supplier communications. FAC ¶¶ 98–114. None of these allegations state a viable claim.

#### A. The FDD's supply disclosure does not mean manufacturers cannot sell similar products to others.

The FDD does not say what Plaintiffs claim it says. Item 8 identifies approved suppliers and applicable purchasing restrictions; it does not represent that UFG's designated suppliers are the only entities in the marketplace capable of manufacturing or selling comparable equipment. Plaintiffs' contrary interpretation improperly divorces Item 8 from the contractual restrictions it describes.

The distinction is dispositive. Item 8 states that UFG is the "only approved" and "exclusive" supplier of identified UNITS equipment, that there are "no alternate sources of supply," and that franchisees are "required to purchase" UNITS Containers from UFG. FAC ¶ 27. Plaintiffs characterize those statements as false

merely because, according to the FAC, third-party manufacturers allegedly sold identical or comparable products on the open market. *Id*. ¶¶ 28–31, 99. But the existence of third-party manufacturers willing to sell similar products to third parties does not establish that those manufacturers were approved sources for UNITS franchisees, nor does it contradict the purchasing restrictions disclosed in Item 8.

That conclusion follows directly from the Franchise Rule. Item 8 requires disclosure of a franchisee's obligations to purchase equipment and goods from the franchisor, its designee or suppliers approved by the franchisor, including whether the franchisor or its affiliates are "the only approved suppliers" and how alternative suppliers may be approved. 16 C.F.R. § 436.5(h). The Rule therefore distinguishes between the universe of suppliers that may exist in the marketplace and the sources from which a franchisee is contractually permitted or required to purchase.

The Franchise Agreements confirm that distinction here. Franchisees are required to purchase specified goods from approved suppliers, may seek approval to use alternatives, and must purchase UNITS Equipment from UFG, its affiliate, or a designated supplier. FAC ¶¶ 32–33, 49, 53; Ex. A §§ 12.1–12.2. Accordingly, the relevant question is not whether Boxwell, Cardinal, or another third party could sell similar equipment to an unrelated purchaser. The relevant question is whether those entities were approved sources from which a UNITS franchisee could purchase the equipment covered by Item 8. Plaintiffs plead no facts establishing that they were.

Nor does the FAC adequately plead that UFG violated the MFIL. Michigan's Franchise Investment Law prohibits making an untrue statement of material fact or omitting a material fact necessary to prevent a statement from being misleading in context. Mich. Comp. Laws § 445.1505(b). It likewise prohibits fraudulent or deceitful conduct in connection with the offer or sale of a franchise. Id. § 445.1505(a), (c). But Plaintiffs still must identify an actual materially false or misleading representation. The MFIL does not convert a facially accurate disclosure of franchisee purchasing restrictions into a misrepresentation merely because comparable products may be available to persons outside the franchise system.

The revenue theory fails for the same fundamental reason: Plaintiffs have not pleaded facts establishing that the FDDs contained a false figure. The FDDs expressly disclose aggregate revenue from required purchases. FAC Ex. C, PageID.822. Yet Plaintiffs allege only, "[o]n information and belief," that UFG understated revenue, rebates or markups. FAC ¶ 34. They identify no competing revenue figure, particular transaction/rebate, undisclosed payment, markup, supplier arrangement, or other fact demonstrating that the disclosed figures were inaccurate.

That is not enough under Rules 8, 9(b) or *Iqbal's* plausibility standard. The Sixth Circuit requires fraud allegations to identify the substance of the alleged misrepresentation, its circumstances, and facts supporting the asserted fraudulent scheme and injury; Rule 9(b) is intended to prevent precisely the sort of conclusory

allegations that would permit discovery to be used as a fishing expedition. *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247–48 (6th Cir. 2012).

Plaintiffs have not alleged facts showing what the correct revenue figure was, which particular disclosure was false, what transaction was omitted, when the alleged understatement occurred, or how the disclosed figures were calculated incorrectly. "On information and belief" is not a substitute for those missing facts. Without facts showing that the disclosed revenue figures were false or misleading, Plaintiffs have not plausibly alleged an MFIL violation or satisfied Rule 9(b).

In short, Plaintiffs' Item 8 theory rests on a false equivalence between market availability and franchisee-approved sourcing, while their revenue theory rests on speculation untethered to any identified false figure or transaction. Neither theory sufficiently identifies a materially false statement or omission.

### B. The software allegations still do not plausibly show that the identified FDD statement was false or reasonably relied upon.

Plaintiffs' original software theory challenged StoreSmart's functionality years after contracting. The Court held that it did not establish that the quoted FDD statement was false or support reliance on future software that remained unchanged. Order, ECF No. 20, PageID.562–564. The FAC now alleges that the software designated to Plaintiffs in 2022 was SiteLink, a third-party product. FAC ¶ 41.

But Item 11 says UFG had developed a separately named "UNITS® Operating Software" used for specified functions and by affiliates since 2005. *Id*. ¶

40. Alleging that SiteLink was designated to Plaintiffs does not plead facts showing the named UNITS Operating Software did not exist, was not developed by UFG, or was not used by affiliates. The claim depends on assuming the two products were identical. And, in any event, Item 11 states that Plaintiffs were required to use IT equipment and services designated by UFG, including the UNITS Operating Software, making clear that the requirement was broader than, and not limited to, the UNITS Operating Software. FAC Ex. C, PageID.829.

Nor does the FAC plead reasonable reliance on an assurance that every designated software would remain UFG-owned or unchanged. The FDD disclosed franchisees' responsibility for software and warned UFG might not be able to adapt its proprietary program for every franchisee; the Agreements expressly allowed UFG to modify the System, including software. FAC ¶¶ 65–68.

### C. Count II does not plead the duty or particularity required for Michigan silent fraud.

A silent-fraud claim requires a duty to disclose, and no general duty exists in an arm's-length commercial transaction to volunteer material information. *Hord v. Env't Rsch. Inst. of Mich.*, 463 Mich. 399, 412, 617 N.W.2d 543, 550 (2000). Such a duty most commonly arises when a specific inquiry receives an incomplete answer. *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 666 (6th Cir. 2013). A failure to inquire "dooms a silent-fraud claim." *Id.* at 666.

The FAC identifies no duty requiring UFG to disclose its acquisition costs,

gross margins, or upstream manufacturers. Instead, it invokes UFG's superior knowledge and Section 12.2's pricing term (FAC ¶¶ 49–52, 105). But Michigan rejects an "inchoate" disclosure duty merely because one party possesses information the other wants. *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 29-32 (1998). The Franchise Agreements, moreover, disclose UFG's right to retain supplier rebates, markups, and other benefits. FAC ¶ 35; Ex. A § 12.1.

Nor does the FAC identify a qualifying inquiry. At most, the FAC alleges that UFG raised container costs and lower-priced vendors at unspecified times and that Erik Lorensen said purchasing had to go through UFG. But they identify no specific Plaintiff, date, transaction, or question asking for UFG's cost or margin. In any event, Mr. Lorensen's alleged response tracks the disclosed exclusive-purchasing requirement. *Id.* ¶¶ 55, 62. Rule 9(b) requires more.

**D. The negligent representation claim fails with the same predicates.**

Count III does not identify a separate representation or transaction. It expressly relies on the same FDD statements underlying Counts I and II and alleges that UFG later "repeated the substance" of the same exclusive-supply representations in connection with Plaintiffs' purchasing decisions. *Id.* ¶ 111. Negligent misrepresentation still requires a false material representation, reasonable reliance, and resulting pecuniary loss; the principal distinction is that the representation need only have been made negligently rather than knowingly or

recklessly. *Cleveland Indians Baseball Co. v. N.H. Ins. Co.*, 727 F.3d 633, 641 (6th Cir. 2013). Indeed, the Court previously analyzed Plaintiffs' fraudulent- and negligent-misrepresentation theories together because they depended on substantially the same elements. Order, ECF No. 20, PageID.556–558.

The FAC's new allegations concerning duty do not cure the defects. Plaintiffs allege that UFG had a pecuniary interest in the statements and thus owed a duty to exercise reasonable care in communicating information concerning equipment sources, availability and cost, and software ownership. FAC ¶¶ 112–113. But alleging a duty of care does not make an otherwise nonactionable statement false, nor does it supply reasonable reliance. Plaintiffs still must show that the representations in Paragraph 98 were false and that each Plaintiff reasonably relied on them when entering the franchise relationship or making later purchases. *Id.* ¶¶ 111-114. Those are the same predicates that fail for the reasons discussed above.

And because Count III expressly alleges that the same representations were "false" and incorporates the same alleged course of misrepresentation supporting Counts I and II, it sounds in fraud and is subject to Rule 9(b). Order, PageID.558; *DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 384 (6th Cir. 2015). Recasting the allegations as negligence does not save them. Count III should be dismissed.

## II. The Contract-Based Claims Do Not Adequately Plead a Breach.

South Carolina law governs the contract claims. Order, ECF No. 20,

PageID.565. To support these claims, Plaintiffs are required to plead a contract, breach and damages. *Montgomery Holdings, LLC v. Merlo*, 447 S.C. 502, 515 (Ct. App. 2026). The FAC adds allegations and new labels, but its four contract-based counts still do not plausibly plead actionable breaches.

### A. Count IV still does not plausibly plead prohibited NAF expenditures or a Plaintiff-specific accounting breach.

The Court previously held that "corporate salaries" did not plausibly show misuse of the NAF because Section 10.3.1 of the 2022 Franchise Agreements permit reasonable salaries associated with NAF administration. Order, ECF No. 20, PageID.568–570. The FAC now alleges only "on information and belief" that salaries went to personnel outside the permitted categories, without identifying an employee, role, or activity. FAC ¶¶ 83, 117.

GR Moving's 2021 Franchise Agreement likewise permits reasonable costs and expenses for activities reasonably related to NAF administration. *Id*. ¶ 80. Plaintiffs' position that it contains "no exception for salaries" mistakes the absence of a salary example for a prohibition; the FAC pleads no facts showing the salaries were outside the broader administrative-expense language. *Id.* ¶ 117.

The conference and NASCAR allegations likewise identify no date, amount, payee or facts demonstrating a nonpermitted expense. *Id.* ¶¶ 84, 117. Labels like "vendor relationships" or "personal preference" do not supply those facts.

The accounting theory fails as to Scurryfunge and SE Michigan because their

Franchise Agreements require only a "high-level summary" of the annual NAF accounting, which the FAC says UFG provided to the "entire network." *Id.* ¶¶ 86-87. The similar provision in GR Moving's agreement differs, but the FAC alleges only that a separate association requested an "accounting and audit"; it does not allege a Section 10.3.4 request by GR Moving that UFG denied. *Id.* ¶¶ 85, 87.

The StoreSmart "overcollection" theory identifies no erroneous charge, resulting Gross Sales figure, NAF amount, or contractual refund obligation. *Id.* ¶ 119. Count IV therefore does not plead Plaintiff-specific breach and causation.

### B. Count V does not plausibly allege a breach of Section 12.2's pricing, profit or delivery obligations.

Count V fails because the FAC does not plead facts showing that UFG violated any of the obligations Section 12.2 actually imposes. Plaintiffs rely on generalized assertions about lower prices available elsewhere, inferred margins, and delivery delays, but they do not identify a particular transaction from which the Court could plausibly infer that UFG charged a noncompetitive price, earned an unreasonable profit, or failed to satisfy a contractual delivery obligation.

Section 12.2 of the Franchise Agreements commits UFG to provide UNITS Equipment "at competitive prices" while expressly preserving its right to earn "a reasonable profit." FAC ¶ 49. Yet the FAC identifies no Plaintiff purchase by date and model, the price UFG charged, a contemporaneous price for the same equipment in the same configuration and quantity, or comparable freight, tariff, and other

transaction costs. *Id.* ¶¶ 51–52. Instead, Plaintiffs point to advertised prices and ask the Court to infer that any higher UFG price necessarily was noncompetitive. But "competitive prices" does not mean the lowest advertised price available from any source, and the FAC supplies no factual basis for comparing the alleged alternatives to any actual Plaintiff transaction.

The unreasonable-profit theory is similarly conclusory. The Agreements expressly disclose UFG's right to earn a profit and retain supplier-related benefits. *Id*. ¶¶ 35, 49. Plaintiffs attempt to infer UFG's historical profit margin from pricing under a different direct-purchase program introduced in 2026 (*id*. ¶ 52), rather than from the cost and sale price associated with any transaction involving Plaintiffs. That later program does not, without more, plausibly establish that UFG earned an unreasonable profit on earlier sales.

Nor does the FAC plead a breach based on delivery delays. It identifies no contractual delivery deadline or ordering or shipping procedure that UFG violated. Section 12.2 requires UFG to make equipment available in "reasonable quantities" under the applicable ordering and shipping procedures; it does not guarantee delivery by a particular date. *Id*. ¶¶ 49, 124. Allegations that certain deliveries took longer than Plaintiffs expected do not, standing alone, plead breach of Section 12.2.

### C. Section 21.14 cannot be used to override the Franchise Agreements' specific grants of authority.

Count VII does not state a new claim; it repackages the implied-covenant

theory the Court already dismissed as an alleged breach of an express contractual duty. Plaintiffs rely on Section 21.14, which generally requires both parties to act reasonably and in good faith "to honor the intent and purpose" of the Franchise Agreements. FAC ¶ 134. But a general good-faith provision does not override the contractual grants of authority or create obligations that the parties never agreed to.

Under South Carolina law, the implied covenant of good faith and fair dealing cannot be used to prohibit conduct that a contract expressly permits or to impose duties that are inconsistent with express terms. *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277–78 (1995); *Road, LLC v. Beaufort Cnty.*, 443 S.C. 11, 24 (2024). Section 21.14 does not alter that rule. Its reference to "intent and purpose" reinforces the point: the provision requires the parties to honor the agreements as written; it does not authorize a court to rewrite their specific provisions.

But that is precisely what Count VII attempts to do. Plaintiffs invoke Section 21.14 to impose obligations that the Agreements expressly withhold or do not contain. Their StoreSmart theory seeks a software guarantee that this Court has already determined the Franchise Agreements do not provide. Their NAF and pricing theories simply duplicate the allegations underlying Counts IV and V. FAC ¶ 136(a)–(c). Section 21.14 cannot revive those theories by recasting them as violations of a general duty of good faith.

The supplier-approval theory fails for an independent reason: Plaintiffs did

not invoke the contractual process they now claim UFG breached. Section 12.1 requires a franchisee seeking approval of an alternative supplier to submit the necessary information before UFG is required to consider the request. FAC ¶ 53; Ex. A § 12.1. Yet the FAC admits that Plaintiffs never made a formal request, asserting instead that doing so would have been “futile.” *Id.* ¶ 55. Plaintiffs cannot establish a breach of a contractual approval process they admittedly never initiated. Nor does Section 12.1 promise approval once a request is made; it expressly provides that UFG need not approve a particular supplier and may revoke an approval in its sole discretion. *Id.* Ex. A § 12.1. A general good-faith clause cannot eliminate those express contractual limitations.

The LDM theory fails for the same reason. Section 12.15 provides that UFG “may remit” payments and gives UFG the sole authority to designate the parameters of LDM services. *Id.* ¶ 93; Ex. A § 12.15. Those provisions confer discretion; they do not create a mandatory revenue-sharing obligation. Plaintiffs cannot use Section 21.14 to transform “may remit” into “must remit” or to replace UFG’s expressly reserved discretion with a mandatory payment obligation.

In short, Section 21.14 of the Franchise Agreements cannot do the work Plaintiffs assign to it. It does not create a StoreSmart guarantee, require approval of an alternative supplier that Plaintiffs never formally requested, impose the NAF and pricing obligations alleged elsewhere in the FAC, or convert UFG’s discretionary

LDM authority into a mandatory revenue-sharing promise. Each theory conflicts with, or seeks to supplement, specific provisions of the Franchise Agreements. Because the general good-faith provision cannot override those provisions or create obligations the Agreements do not contain, Count VII should be dismissed.

### III. Count VIII Still Does Not State an MFIL Claim.

The Court dismissed the original MFIL claim because Plaintiffs' theories concerning the proprietary system, profitability, advertising and vendor omissions failed along with the underlying fraud and contract theories. Order, ECF No. 20, PageID.572–574. The FAC now recasts those same theories under Item 8, Item 11, and the Franchise Rule. FAC ¶¶ 140–148. The new labels do not cure the defects.

First, Plaintiffs misconstrue Item 8, which identifies the sources approved for UNITS franchisees. Item 8 does not state or imply that an upstream manufacturer is prohibited from selling similar goods to non-franchisees. Indeed, the same disclosure expressly told Plaintiffs that they were required to purchase Containers through UFG. *Id.* ¶ 27. That a manufacturer may sell similar products to outsiders does not contradict Item 8 or render UFG's disclosure misleading. Plaintiffs' theory depends on conflating the sources available to UNITS franchisees with the separate question of whom a manufacturer may sell to outside the franchise system.

Second, the FAC fails to demonstrate that the required-purchase revenue figures disclosed in Item 8 were false. FAC ¶ 34. Plaintiffs cannot state an MFIL

claim merely by asserting that additional economic information could have been disclosed; they must identify a materially false or misleading disclosure. *Cook v. Little Caesar Enters., Inc.*, 210 F.3d 653, 659 (6th Cir. 2000). The FAC alleges only on information and belief—and without identifying any supporting transaction, payment, calculation, or competing figure—that UFG understated the aggregate revenue figures disclosed in Item 8. It instead attempts to infer falsity from its separate theory that UFG earned undisclosed resale margins. But the existence of an alleged resale margin does not, without more, plausibly establish that the aggregate revenue figures disclosed in Item 8 were inaccurate or misleading. That is not enough to state an MFIL claim.

Third, Plaintiffs invoke the wrong provision of the Franchise Rule. Paragraph 144(ii) relies on 16 C.F.R. § 436.5(h)(8), which addresses required disclosures concerning payments made by third-party suppliers to a franchisor. But the FAC alleges that UFG itself purchased and resold the Containers. *Id.* ¶¶ 31, 35, 52. On Plaintiffs' own allegations, there was no payment from a supplier to UFG of the type addressed by § 436.5(h)(8). Plaintiffs cannot transform UFG's alleged resale margin into a supplier payment simply by labeling it one. The Rule separately addresses a franchisor's revenue from required purchases in § 436.5(h)(6), and the FAC itself acknowledges that UFG disclosed its aggregate required-purchase revenue. *Id.* ¶ 34. Section 436.5(h)(8) does not provide a backdoor disclosure requirement for an

alleged resale margin that falls outside the provision's text. Plaintiffs' attempt to invoke (h)(8) therefore fails on the face of their own allegations.

Finally, the disclosures Plaintiffs received defeat the theory that UFG concealed its economic interests in the purchasing arrangement. The FDDs disclosed that franchisees were required to purchase Containers through UFG and disclosed aggregate required-purchase revenue. FAC ¶¶ 27, 34–35. The Franchise Agreements separately disclosed UFG's right to receive supplier rebates and markups. *Id.* ¶ 35. Plaintiffs therefore cannot plausibly characterize the existence of UFG's purchasing structure or its right to receive supplier-related economic benefits as undisclosed.

Section 445.1505(b) does not require a franchisor to disclose every additional fact that a franchisee might later regard as economically significant. Nor does it permit Plaintiffs to convert a disclosed contractual arrangement into an actionable omission merely because they now contend that more detail would have been useful. The relevant information was disclosed, and the FAC identifies no materially false statement or legally required disclosure that UFG omitted.

The FAC changes the labels, not the substance, of the claim. The Court previously rejected the underlying theories, and Plaintiffs' revised theories do not cure those defects. Count VIII should again be dismissed.

## IV. The LDM Claims Fail Under the Text of the Franchise Agreements and South Carolina Restitution Law.

**A. Count IX omits UFG's express discretion.**

Count IX presents the clearest example of Plaintiffs attempting to impose contractual obligations that the Franchise Agreements do not contain. The FAC quotes Section 12.15 accurately: UFG "may collect" customer payments and "may remit" those payments to a franchisee; UFG has the "sole right to designate the parameters" of LDM services; and UFG "reserves the right to require" an LDM addendum. FAC ¶ 93; Ex. A § 12.15. But the FAC's claim does not follow from those provisions. Instead, the FAC replaces the Franchise Agreement's operative word "may" with "would," and then recasts a discretionary provision as a mandatory "single contractual mechanism." *Id*. ¶¶ 153–154. Neither proposition appears in Section 12.15. Plaintiffs are not interpreting the contract; they are rewriting it.

The Franchise Agreements control. *Williams*, 498 F. App'x at 536. And, under South Carolina law, "may" carries its ordinary permissive meaning: it confers discretion, not a mandatory obligation. *Grant v. Mount Vernon Mills, Inc*., 370 S.C. 138, 150 (Ct. App. 2006).

The same problem defeats Plaintiffs' theory concerning the LDM addendum. Section 12.15 provides only that UFG "reserves the right to require" an addendum. FAC ¶ 93; Ex. A § 12.15. That language grants UFG an option; it does not establish that an addendum is mandatory, much less that it is a prerequisite to every LDM program or payment arrangement. Plaintiffs again convert discretionary language

into a contractual command that the parties never agreed to.

Count IX therefore rests on a premise the Franchise Agreements foreclose. Plaintiffs' theory requires the Court to replace "may" with "would," transform a reserved right into a mandatory requirement, and impose a "single contractual mechanism" that Section 12.15 does not create. The Court should enforce the agreements as written, not the version Plaintiffs wish they had signed. Because the obligations on which Count IX depends do not exist in the Franchise Agreements, Count IX fails as a matter of law and should be dismissed.

### B. Count X cannot use unjust enrichment to obtain LDM compensation the Franchise Agreements do not promise.

For Scurryfunge and SE Michigan, an express contract governs LDM and bars quasi-contract for the same subject. *Swanson v. Stratos*, 350 S.C. 116, 121, 564 S.E.2d 117, 120 (Ct. App. 2002); *Turner v. Rams Head Co.*, No. 3:05-2251-MBS, 2007 WL 2579386, at *7 (D.S.C. Sept. 4, 2007). Section 12.15 of the Franchise Agreements expressly addresses LDM, customer payments, remittances, fees, and program parameters. FAC ¶ 93; Ex. A § 12.15. Plaintiffs cannot plead around that allocation merely because it does not promise the compensation they seek.

GR Moving's Franchise Agreement does not contain the LDM provision found in the 2022 agreements, but that does not by itself make UFG's receipt of LDM revenue unjust. The FAC does not identify any particular lead or customer attributable to GR Moving, the amount GR Moving allegedly spent to generate that

lead, the revenue UFG received from the resulting move, or any service GR Moving performed for which it was not compensated. *Id*. ¶¶ 88–92, 159–161. To the contrary, the FAC alleges that UFG performed the long-distance moving service and collected payment for that service. On those allegations, Plaintiffs have not plausibly alleged that UFG retained a benefit conferred by GR Moving under circumstances that would make retention unjust.

## V. The New Consumer Protection Claims Fail as a Matter of Law.

### A. The SCUTPA Claim Alleges No Deceptive Practice Affecting the Public-Interest and No South Carolina Nexus.

Count XI fails because the FAC does not allege a deceptive practice affecting the public or a South Carolina transaction, purchaser or injury.

First, SCUTPA does not turn every private contractual dispute into a statutory claim. The Act requires an unfair or deceptive trade practice that affects the public interest; a purely private wrong is insufficient, and a breach of contract, "without more," does not establish a violation. *Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 478–79, 351 S.E.2d 347, 349 (Ct. App. 1986) ("[a]n unfair or deceptive trade practice that affects only the parties to a trade or commercial transaction is beyond the Act's embrace"); *Key Co. v. Fameco Distribs., Inc.*, 292 S.C. 524, 527, 357 S.E.2d 476, 478 (Ct. App. 1987) (no UTPA violation for breach of oral contract where only contracting parties are affected).

The alleged injury was suffered by three Michigan companies in connection

with their own franchise relationships and equipment purchases. FAC ¶¶ 7–9, 167, 169. Plaintiffs attempt to manufacture a public-interest component by alleging that UFG uses standardized supplier restrictions and that the alleged conduct could therefore be repeated. FAC ¶¶ 167, 169. But the possibility that UFG may apply the same contractual terms to other franchisees does not transform a private contractual dispute into conduct affecting the public interest. A standardized contract provision remains a private contractual provision; its repetition does not make it deceptive.

Nor does the FAC plausibly allege the predicate deception in the first place. Plaintiffs' theory is that UFG's disclosed purchasing restrictions and disclosed right to receive supplier-related benefits somehow concealed that UFG could resell equipment at a profit. But the governing documents disclose the relevant purchasing structure and UFG's rights. The alleged "deception" depends on treating a disclosed contractual arrangement as undisclosed conduct. It is not. Because the underlying conduct is not plausibly deceptive, there is no unfair or deceptive practice on which a SCUTPA claim can rest, much less one affecting the public.

Second, the FAC lacks the necessary South Carolina nexus. SCUTPA defines "trade or commerce" to include commerce affecting "the people of this State." S.C. Code Ann. § 39-5-10(b). Yet every transaction identified in the FAC is Michigan-based and involved Michigan franchisees and their Michigan operations. FAC ¶¶ 7–9, 166–169. Plaintiffs identify no South Carolina consumer, transaction or injury

affected by the alleged deception. UFG's South Carolina headquarters does not, without more, plausibly establish that the challenged conduct occurred in or affected South Carolina trade or commerce. *Noack Enters.*, 290 S.C. at 478–81 (noting UTPA addresses practices affecting South Carolina consumers in South Carolina).

### B. Count XII falls outside the MCPA because the challenged purchases were commercial.

The MCPA does not apply to the transactions alleged here. The statute covers goods, property or services furnished primarily for "personal, family, or household purposes," Mich. Comp. Laws § 445.902(1)(g); *Slobin v. Henry Ford Health Care*, 469 Mich. 211, 216-18 (2003) (the MCPA "does not apply to purchases that are primarily for business purposes."). Plaintiffs are business entities that purchased Containers for use in their franchised moving-and-storage operations. FAC ¶¶ 7–9, 172–176. Those are quintessential commercial transactions, not purchases for personal, family or household use. The MCPA therefore does not reach them.

Nor can Plaintiffs avoid the statutory bar by recasting their claim as one arising from the franchise relationship. The statute expressly excludes "the purchase or sale of a franchise." Mich. Comp. Laws § 445.902(1)(g). Thus, whether Plaintiffs characterize Count XII as a challenge to their Container purchases or as a claim arising from their acquisition of the franchises, the statute does not apply. Count XII therefore fails as a matter of law and should be dismissed with prejudice.

## VI. Further Leave to Amend Should Be Denied.

The Court has already identified the pleading defects claim by claim and gave Plaintiffs an opportunity to cure the deficiencies. Order, ECF No. 20, PageID.574. Plaintiffs filed a 68-page FAC asserting twelve counts supported by exhibits, demonstrating that they had a full opportunity to plead their best case, but they still failed to cure the deficiencies identified by the Court.

Rule 15 does not give a plaintiff unlimited opportunities to replead. Leave to amend may be denied where a plaintiff repeatedly fails to cure identified deficiencies or where amendment would be futile. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) ("[R]epeated failure to cure deficiencies by amendments previously allowed" supports denial of further leave); *Johnson v. Rocket Mortgage, LLC*, No. 23-13251, 2024 WL 2750001, at *4 (E.D. Mich. May 29, 2024) (denying leave to amend with prejudice where amended pleading cannot state a viable claim); *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 650–51 (E.D. Mich. 2019) (denying request to further amend where plaintiffs had opportunity to address identified pleading deficiencies).

The FAC's remaining defects are not defects that additional pleading can cure. No additional factual allegations can change what the contracts say or expand the scope of a statute that does not apply. The same is true of Plaintiffs' other deficient claims, which continue to rest on conclusory allegations of fraud and obligations that

the Franchise Agreements do not impose. Further amendment would be futile and would only prolong litigation over claims Plaintiffs have had a full opportunity to plead. The Court should dismiss the FAC with prejudice.

## CONCLUSION

For the foregoing reasons, UFG respectfully requests that the Court dismiss the First Amended Complaint in its entirety with prejudice.

Dated: September 29, 2026

Respectfully submitted,

*/s/ Clair E. Wischusen*
Peter G. Siachos (admitted to practice)
Clair E. Wischusen (admitted to practice)
Cara Swindlehurst (P79953)
GORDON REES SCULLY MANSUKHANI LLP
37000 Woodward Avenue, Suite 225
Bloomfield Hills, MI 48304
Tel: (313) 426-9815
psiachos@grsm.com
cwischusen@grsm.com
cswindlehurst@grsm.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 29, 2026, the foregoing was e-filed with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all parties.

*/s/ Clair E. Wischusen*
Clair E. Wischusen